Appeal No. 22-3043
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT
_____

ESTATE OF CEASAR STINSON
and CHIPO K. SAMVURA,
         *Plaintiffs-Appellees,*

         *v.*

JOEL STREICHER,
         *Defendant-Appellant.*
_____

Appeal from the United States District Court
for the Eastern District of Wisconsin,
Case No. 2:21-cv-01046,
the Honorable J.P. Stadtmueller, United States
District Judge, Presiding
_____

# BRIEF AND SHORT APPENDIX OF
# DEFENDANT-APPELLANT JOEL STREICHER
_____

HANSEN REYNOLDS LLC
Andrew A. Jones
James F. Cirincione
John W. McCauley
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: (414) 455-7676
ajones@hansenreynolds.com

GRADY, HAYES & NEARY LLC
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive
Waukesha, Wisconsin 53188
Phone: (262) 347-2001
tjd@ghnlawyers.com

*Attorneys for Defendant-*
*Appellant Joel Streicher*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-3043

Short Caption: Estate of Ceasar Stinson v. Joel Streicher

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Joel Streicher

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hansen Reynolds LLC (new); Grady, Hayes & Neary, LLC

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

   N/A

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

   N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: s/ Andrew A. Jones     Date: 12/19/2022

Attorney's Printed Name: Andrew A. Jones

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address: Hansen Reynolds LLC

   301 N. Broadway Suite 400, Milwaukee, WI 53202

Phone Number: 414-326-4952     Fax Number: 414-273-8476

E-Mail Address: ajones@hansenreynolds.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As    Clear Form

Appellate Court No: 22-3043

Short Caption: Estate of Ceasar Stinson, et al. v. Joel Streicher, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Joel Streicher

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Grady, Hayes & Neary, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Thomas J. Donnelly    Date: November 16, 2022

Attorney's Printed Name: Thomas J. Donnelly

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✓    **No** ☐

Address: Grady, Hayes & Neary, LLC

    N14 W23777 Stone Ridge Drive, Suite 200, Waukesha, WI  53188

Phone Number: (262) 347-2001    Fax Number: (262) 347-2205

E-Mail Address: tjd@ghnlawyers.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-3043</u>

Short Caption: <u>Estate of Ceasar Stinson et. al. v. Joel Streicher</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Joel Streicher

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Hansen Reynolds LLC and Grady, Hayes & Neary LLC

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>s/ James F. Cirincione</u>      Date: <u>2/21/23</u>

Attorney's Printed Name: <u>James F. Cirincione</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]   **No** [✓]

Address: <u>301 N. Broadway Suite 400</u>

    <u>Milwaukee, WI 553202</u>

Phone Number: <u>414-455-7676</u>      Fax Number: <u>414-273-8476</u>

E-Mail Address: <u>jcirincione@hansenreynolds.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-3043

Short Caption: Estate of Ceasar Stinson et. al. v. Joel Streicher

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Joel Streicher

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hansen Reynolds LLC and Grady, Hayes & Neary LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature:   s/ John W. McCauley                    Date: 2/21/23

Attorney's Printed Name:   John W. McCauley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:   10 E Doty St. Suite 3900

Madison, WI 53703

Phone Number:  608-841-7351                    Fax Number:  414-273-8476

E-Mail Address:  jmccauley@hansenreynolds.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

JURISDICTIONAL STATEMENT ........................................................................... 1

   A.  District Court Jurisdiction ............................................................... 1

   B.  Appellate Jurisdiction ...................................................................... 2

STATEMENT OF THE ISSUES ............................................................................... 4

STATEMENT OF THE CASE .................................................................................. 4

   A.  Material Facts .................................................................................... 4

   B.  District Court Proceedings ............................................................. 8

SUMMARY OF ARGUMENT ................................................................................ 10

STANDARD OF REVIEW ...................................................................................... 11

ARGUMENT ............................................................................................................ 12

   A.  Streicher Has Qualified Immunity Because He Did Not Violate Stinson's Substantive Due Process Rights .................................................. 13

      1.  A Substantive Due Process Violation Typically Requires a Deliberate Abuse of Power that Shocks the Conscience. .......................................... 13

      2.  In Non-Emergency Situations, Deliberate Indifference May Suffice If It Shocks the Conscience and Supports an Inference that the Official Intended to Do Harm. ........................................................ 15

      3.  Streicher's Conduct—Driving While Distracted and Violating the Rules of the Road—Was Not Deliberately Indifferent and Does Not Shock the Conscience. ................................................................ 21

   B.  Streicher Also Has Qualified Immunity Because Stinson's Asserted Constitutional Right was Not Clearly Established at the Time of the Collision. ........................... 24

      1.  The Estate Must Show that Streicher's Conduct was Clearly Unconstitutional as of January 2020. ........................................... 25

      2.  The District Court Wrongly "Deferred" this Issue. ......................... 27

      3.  As of January 2020, No Authority Had Clearly Established that Streicher's Conduct Was Unconstitutional. ....................................... 28

      4.  Streicher's Conduct Was Not Obviously Unconstitutional. ............ 33

CONCLUSION ......................................................................................................... 34

CERTIFICATE OF COMPLIANCE ...................................................................... 35

CIRCUIT RULE 30(d) STATEMENT ................................................................... 35

SHORT APPENDIX ................................................................................................. 36

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Sangamon County,*
    705 F.3d 706 (7th Cir. 2013) .................................................................... 33, 34

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ............................................................................... 12, 25

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..................................................................................... 12

*Archie v. Racine,*
    847 F.2d 1211 (7th Cir. 1988) ..................................................................... 16

*Armstrong v. Squadrito,*
    152 F.3d 564 (7th Cir. 1998) ....................................................................... 17

*Behrens v. Pelletier,*
    516 U.S. 299 (1996) ..................................................................................... 27

*Browder v. Albuquerque,*
    787 F.3d 1076 (10th Cir. 2015) ............................................................... 20, 24

*Browder v. Casaus,*
    675 F. App'x 845 (10th Cir. 2017) ..................................................... 20, 21, 32

*Bublitz v. Cottey,*
    327 F.3d 485 (7th Cir. 2003) ................................................................. passim

*Carter v. Simpson,*
    328 F.3d 948 (7th Cir. 2003) ....................................................................... 30

*Checki v. Webb,*
    785 F.2d 534 (5th Cir. 1986) ....................................................................... 21

*Cibulka v. Madison,*
    992 F.3d 633 (7th Cir. 2021) ....................................................................... 26

*Collins v. Harker Heights,*
    503 U.S. 115 (1992) ..................................................................................... 14

*Contreras v. Chicago,*
   119 F.3d 1286 (7th Cir. 1997) .................................................................12

*Coulter v. Gilmore,*
   155 F.3d 912 (7th Cir. 1998).................................................................12

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ................................................... 14, 15, 16, 18

*Daniels v. Williams,*
   474 U.S. 327 (1986) .............................................................13, 14

*Durham v. Losleben,*
   744  F. App'x  268 (6th Cir. 2018) .......................................23, 32

*Escobedo v. Bender,*
   600 F.3d 770 (7th Cir. 2010) ...........................................11, 26, 29

*Flores v. South Bend,*
   997 F.3d 725 (7th Cir. 2021) ...........................................passim

*Grant v. Trustees of Indiana Univ.,*
   870 F.3d 562 (7th Cir. 2017)...............................................12

*Green v. Post,*
   574 F.3d 1294 (10th Cir. 2009) ......................................... 30, 32

*Hill v. Shobe,*
   93 F.3d 418 (7th Cir. 1996) .............................................passim

*Hope v. Pelzer,*
   536 U.S. 730 (2002) ...........................................................33, 34

*Hunter v. Bryant,*
   502 U.S. 224 (1991)............................................................ 25

*Jones v. Chicago,*
   No. 04-cv-3742, 2008 WL 4153679 (N.D. Ill. Sep. 2, 2008) ............................19, 21, 31

*Jones v. Wilhelm,*
   425 F.3d 455 (7th Cir. 2005) ..............................................3, 13

*Leaf v. Shelnut,*
   400 F.3d 1070 (7th Cir. 2005)...............................................3

*Leiser v. Kloth,*
    933 F.3d 696 (7th Cir. 2019) ...............................................................passim

*Lewis v. Henderson,*
    No. 1:21-cv-1186, 2022 WL 4552460 (S.D. Ind. Sep. 29, 2022) ...........................19, 28

*Lopez v. Sheriff of Cook Cty.,*
    993 F.3d 981 (7th Cir. 2021) ...................................................................... 25

*Malley v. Briggs,*
    475 U.S. 335 (1986) ..................................................................................... 25

*McDowell v. Lansing,*
    763 F.3d 762 (7th Cir. 2014) .......................................................................16

*McGee v. Parsano,*
    55 F.4th 563 (7th Cir. 2022) .................................................................... 3, 4

*McGuire v. United Parcel Serv.,*
    152 F.3d 673 (7th Cir. 1998) ....................................................................... 11

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) .............................................................................2, 3, 28

*Omnicare, Inc. v. UnitedHealth Grp.,*
    629 F.3d 697 (7th Cir. 2011) .......................................................................12

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ............................................................................. 13, 27

*Plumhoff v. Rickard,*
    572 U.S. 765 (2014) .............................................................................passim

*Posey v. Miro,*
    No. 11-cv-5660, 2014 WL 3843940 (N.D. Ill. Aug. 5, 2014) ...................................... 27

*Purvis v. Oest,*
    614 F.3d 713 (7th Cir. 2010) ....................................................................... 25

*Rochin v. California,*
    342 U.S. 165 (1952) ....................................................................................14

*Sain v. Wood,*
    512 F.3d 886 (7th Cir. 2008) .................................................................... 3, 8

*Saucier v. Katz,*
 533 U.S. 194 (2001) ............................................................... 3, 12

*Sauers v. Borough of Nesquehoning,*
 905 F.3d 711 (3d Cir. 2018) ...................................... 21, 24, 27

*Schaefer v. Goch,*
 153 F.3d 793 (7th Cir. 1998) .......................................... 16

*Siegel v. Shell Oil Co.,*
 612 F.3d 932 (7th Cir. 2010) .......................................... 12

*Steen v. Myers,*
 486 F.3d 1017 (7th Cir. 2007) ................................. 16, 30

*Stockton v. Milwaukee County,*
 44 F.4th 605 (7th Cir. 2022) ................................... 16, 17

*Terrell v. Larson,*
 396 F.3d 975 (8th Cir. 2005) ........................................ 17

*Tun v. Whitticker,*
 398 F.3d 899 (7th Cir. 2005) ................................. 17, 30

**Statutes**

28 U.S.C. § 1291 ..................................................................... 2
28 U.S.C. § 1331 ..................................................................... 2
28 U.S.C. § 1367 ..................................................................... 2
28 U.S.C. § 1441 ..................................................................... 2
28 U.S.C. § 1446 ..................................................................... 1
42 U.S.C. § 1983 .................................................................. 1, 2
Wis. Stat. § 939.25 ................................................................. 7
Wis. Stat. § 940.10 ................................................................. 7

**Rules**

Fed. R. App. P. 28 ................................................................. 4
Fed. R. App. P. 4 ................................................................... 2
Fed. R. App. P. 42 ................................................................. 2
Fed. R. Civ. P. 41 .................................................................. 9
Fed. R. Civ. P. 56 ................................................................ 12

## JURISDICTIONAL STATEMENT

### A.  District Court Jurisdiction

Plaintiffs-appellees, the Estate of Ceasar Stinson (the "Estate") and Stinson's spouse, Chipo K. Samvura, brought this action under 42 U.S.C. § 1983 alleging that defendant-appellant, Joel Streicher, formerly a deputy sheriff with the Milwaukee County Sheriff's Office, violated their rights under the due process clause of the Fourteenth Amendment to the U.S. Constitution by causing an automobile collision that killed Stinson. *See* R. 1-1.[1] The Estate and Samvura also asserted claims under Wisconsin law for wrongful death, loss of consortium, and vicarious liability. *Id.*

The Estate and Samvura originally filed their complaint in Milwaukee County Circuit Court on July 29, 2021, against three defendants: Streicher, Milwaukee County, and the County's insurer, Wisconsin County Mutual Insurance Corporation ("WCMIC"). *Id.* Milwaukee County and WCMIC were served with the summons and complaint on August 11, 2021. R. 1 ¶ 1. Within thirty days after service, on September 9, 2021, in compliance with 28 U.S.C. § 1446(a) and (b)(1), they removed the action to federal court by filing a notice of removal in the U.S. District Court for the Eastern District of Wisconsin with a copy of all process, pleadings, and orders that had been served in state court. R. 1. As required by 28 U.S.C. § 1446(b)(2)(A), their co-defendant, Streicher, consented to removal. R. 1 ¶ 4.

---

[1] Citations to the original record on appeal are to "R." followed by the district court docket number and, where appropriate, a page number. Citations to the short appendix are to "SA" followed by the page number. Citations to documents filed in this appeal are to "ECF No." followed by the Seventh Circuit docket number.

This action was removable under 28 U.S.C. § 1441(a) because the district court had original jurisdiction and the Eastern District of Wisconsin was the district embracing the place where the action was pending in state court. The district court's original jurisdiction rested on 28 U.S.C. § 1331 since this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution. The district court had supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a) because they arose out of the same collision as the federal claims and thus formed part of the same case or controversy under Article III of the U.S. Constitution.

## B.  Appellate Jurisdiction

This is an appeal of the district's court's order denying Streicher's motion for summary judgment based on qualified immunity. The district court entered its order on October 18, 2022. R. 41; SA at 25. Streicher and Milwaukee County filed a timely notice of appeal on November 14, 2022, within thirty days after entry of the district court's order. *See* Fed. R. App. P. 4(a)(1)(A); R. 42. Milwaukee County later moved for voluntary dismissal of its appeal under Fed. R. App. P. 42(b), and this Court granted the motion. ECF No. 12, 14. Thus, Streicher is now the sole appellant.

This Court has jurisdiction over Streicher's appeal because a district court's denial of qualified immunity, to the extent it turns on an issue of law, is considered an immediately appealable "final decision" under 28 U.S.C. § 1291. *Mitchell v. Forsyth,* 472 U.S. 511, 524–30 (1985). The reason is that qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Id.* at 526. Consequently, if discovery does not reveal a genuine issue of material fact regarding the availability of qualified immunity, then the officer is entitled to summary judgment

on the issue. *Id.* Otherwise, if the case were erroneously permitted to go to trial, the right to immunity would be "effectively lost." *Id.* Put differently, a motion for summary judgment is the defendant's "final opportunity to secure the full benefit of qualified immunity." *Jones v. Wilhelm,* 425 F.3d 455, 466 (7th Cir. 2005).

This appeal "turns on an issue of law." *Mitchell,* 472 U.S. at 530. The material facts on summary judgment were not in dispute. The question is whether those facts permit the legal conclusion that Streicher violated Stinson's clearly established constitutional rights, thus removing the shield of qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201–02 (2001). This is a legal question subject to immediate appellate review. *See McGee v. Parsano,* 55 F.4th 563, 572 (7th Cir. 2022) (exercising appellate jurisdiction over the "purely legal issues" of whether officers violated plaintiff's due process rights and, even if so, whether they are entitled to qualified immunity because their mistake was a reasonable one); *Leiser v. Kloth,* 933 F.3d 696, 701 (7th Cir. 2019) (holding that even if the question is framed as one of "intent," it is an "issue of law that we have jurisdiction to decide"); *Leaf v. Shelnut,* 400 F.3d 1070, 1078 (7th Cir. 2005) (finding that "whether a particular action violates the Constitution" is a "question of law").

On appeal of such questions, this Court can take the historical facts assumed by the district court as given, *Leaf,* 400 F.3d at 1078, and review the district court's application of the law to those facts, *Sain v. Wood,* 512 F.3d 886, 890–91 (7th Cir. 2008). That is what Streicher asks this Court to do here.

Nevertheless, the Estate and Samvura filed a motion to dismiss this appeal for alleged lack of appellate jurisdiction. ECF No. 7. Streicher responded to the motion to dismiss, explaining the basis for appellate jurisdiction in detail. ECF

3

No. 11. Streicher also filed a Fed. R. App. P. 28(j) notice of supplemental authority concerning this Court's recent decision in *McGee.* ECF No. 16. For the reasons laid out in those filings and explained above, this Court's jurisdiction is secure.

## STATEMENT OF THE ISSUES

A sheriff's deputy was driving while distracted, drove straight from a right-turn-only lane through a red light, and caused a fatal car collision. Is he entitled to qualified immunity because either: (1) his conduct did not rise to the level of conscience-shocking deliberate indifference needed to support a Fourteenth Amendment due process claim; or (2) even if he violated due process, the law at the time did not clearly establish that his conduct was unconstitutional?

## STATEMENT OF THE CASE

### A.   Material Facts

For purposes of summary judgment, the parties below jointly filed a detailed, nine-page agreed statement of facts. R. 33; SA at 10. The district court drew its summary of the relevant facts almost entirely from the parties' joint statement. *See* R. 41 at 3–10; SA at 27–34.

On January 25, 2020, Joel Streicher, an on-duty employee of the Milwaukee County Sheriff's Office, drove his squad car, an unmarked Chevy Tahoe, straight through an intersection from a right-turn-only lane and against a red light. R. 33 at 4–5; SA at 13–14. Streicher was not speeding, and he was not under the influence of any intoxicant. *Id.* at 5-6; SA at 14-15. His Tahoe collided with a vehicle driven by Ceasar Stinson, resulting in Stinson's death. *Id.* at 8; SA at 17.

On the day of the accident, Streicher's duty assignment was to patrol a portion of the interstate freeway system in Milwaukee County. *Id.* at 4; SA at 13. Earlier

that morning, before the collision, Streicher had gone to the Milwaukee County Safety Building at 9th and State Streets in the City of Milwaukee shortly after 10:45 a.m. to use the bathroom. *Id.* While there, he tried to get onto the internet using various apps on his phone, including a dating app called Zoosk. *Id.* At 10:45 a.m., Streicher received an explicit message from a woman on the Zoosk app, and at 10:52 a.m. he replied. *Id.* at 5; SA at 14. Just after 11:00 a.m., Streicher returned to his Tahoe and drove toward the entrance ramp onto northbound I-43 at West Highland Avenue to return to patrol. *Id.* at 4; SA at 13.

As he drove toward the entrance ramp onto the interstate, Streicher proceeded northward on North 10th Street at 29 to 30 miles per hour, within the 30-mph speed limit. *Id.* at 5; SA at 14. Neither his siren nor his emergency lights were on, as he was not responding to any emergency. *Id.* at 6; SA at 15. The traffic light at the intersection of North 10th and West State Streets turned yellow for 4 seconds and then red for 11 to 11.5 seconds, but Streicher did not brake or slow down. *Id.* at 5; SA at 14. Instead, he ran the red light and drove straight into the intersection from the right-turn-only lane, colliding with the car driven by Stinson at 11:11:02 a.m. *Id.* at 2; SA at 11.

Streicher testified that as he drove northbound on North 10th Street, he looked at the screen of the computer in his squad car to check for new assignments or activity. *Id.* at 6; SA at 15. Although he did not recall exactly how long or how many times he looked at the computer as he drove, he testified that he was not using the computer just before or at the time of the collision. *Id.* He described looking as his computer as "a look, a glance: more than a glance but not a long extended . . . look." *Id.*

Streicher's personal cellular phone turned on 26 seconds before the collision. *Id.* at 7; SA at 16. The phone unlocked 22 seconds before the collision, through either the manual entry of a code or facial recognition. *Id.*; *see also* R. 39 ¶ 4; SA at 21–22. Streicher testified that he more likely unlocked his phone by looking at it. R. 33 at 7; SA at 16. He testified that he was not using his phone just before or at the time of the collision. *Id.* at 6; SA at 15. According to the official investigation that followed the collision, Streicher's phone showed no evidence of user interaction between the moment 22 seconds before the collision when the phone unlocked and when an app launched 4 seconds after the collision. *Id.* at 7; SA at 16.

As he approached the intersection where the collision occurred, Streicher does not recall seeing that the traffic light was red. *Id.* He did not see Stinson or the car Stinson was driving prior to the collision. *Id.* Another car (not Stinson's) was traveling eastbound on West State Street and crossed the intersection roughly five seconds before Streicher entered the intersection. *Id.* at 7–8; SA at 16–17. Streicher did not see that car either. *Id.* He testified that he was not aware of anything obstructing his view of the intersection. *Id.* at 6; SA at 15. He was not under the influence of any intoxicating substance at the time. *Id.*

Streicher later testified that he should have seen the red light and stopped his vehicle. *Id.* at 8; SA at 17. He admitted that he violated two rules of the road by running a red light and driving straight from a right-turn-only lane. *Id.* at 7; SA at 16. Before this incident, Streicher had been trained that he was not allowed to let his computer distract from his driving and that driving while distracted by his computer could lead to "bad things." *Id.* at 3; SA at 12. He knew that distracted driving could cause accidents and accidents could lead to death. *Id.* He also knew

6

that violating the rules of the road could cause collisions. *Id.* On a prior occasion in 2018, Streicher, after stopping at a red light, had driven straight into an intersection from a left-turn-only lane, causing a collision with a car to his right. *Id.* at 3–4; SA at 12–13.

As a result of the collision that killed Stinson, the Milwaukee County Sheriff recommended terminating Streicher's employment; Streicher then resigned. *Id.* at 8; SA at 17. He pled guilty to homicide by negligent operation of a vehicle under Wis. Stat. § 940.10(1). *Id.* An element of that crime was that Streicher's operation of his vehicle created a substantial and unreasonable risk of death or great bodily harm. *Id.*; *see also* Wis. Stat. § 939.25(1) (defining "criminal negligence" as "ordinary negligence to a high degree, consisting of conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another").

The foregoing facts were undisputed, taken from the parties' agreed statement of facts. R. 33; SA at 10. Streicher does not contest any of these undisputed facts on appeal. The Estate also submitted a short list of additional proposed facts in opposition to summary judgment. *See* R. 35. Streicher disputed a handful of these additional facts and the Estate's characterizations of those facts. *See* R. 39; SA at 19. The district court addressed these additional facts in several footnotes in its summary-judgment decision and found that they were immaterial, not genuinely disputed, or concerned the parties' different characterization of the undisputed facts. *See* R. 41 at 4–10 nn.1–6; SA at 28–34. Nevertheless, to the extent this Court finds the additional proposed facts relevant, it can simply take the Estate's

proposed version of the facts as given for purposes of this appeal.[2] *See Sain,* 512 F.3d at 891 (assuming appellee's version of the facts for purposes of qualified-immunity appeal).

## B.   District Court Proceedings

Following Stinson's death, the Estate and Samvura sued Streicher, Milwaukee County, and WCMIC in state court. Milwaukee County and WCMIC, with Streicher's consent, removed the action to district court. R. 1. The Estate brought a substantive due process claim under § 1983 and the Fourteenth Amendment arising from Stinson's death. *See* R. 1-1 ¶¶ 47–55. Samvura asserted a § 1983 claim for loss of consortium. *Id.* ¶¶ 56–60. The Estate and Samvura also asserted state-law negligence claims for wrongful death, loss of consortium, and vicarious liability. *Id.* ¶¶ 61–74.

Streicher, Milwaukee County, and WCMIC moved for partial judgment on the pleadings. R. 8 & 11. The district court granted the motion in part, dismissing both § 1983 claims as against WCMIC and dismissing Samvura's § 1983 claim in its entirety.[3] R. 26 at 9; SA at 9. But the court denied the motion as to the Estate's § 1983 claim against Streicher and Milwaukee County because, in its view, the complaint's allegations, if true, were "sufficient to permit an inference that Streicher acted with intent to cause harm" in violation of Stinson's right to substantive due process. *Id.*

---

[2] With one exception: the Estate incorrectly stated the timeline of Streicher's conversation on the Zoosk app. *See* R. 39 ¶ 3; SA at 21. As the district court pointed out, however, the record was clear on this point. R. 41 at 5 n.2; SA at 29. There was thus no genuine dispute about the timeline of the Zoosk messages.

[3] As a result of the district court's partial grant of the motion for judgment on the pleadings, Samvura no longer has an active § 1983 claim against Streicher, making the Estate the only proper appellee here.

at 5; SA at 5. The motion for judgment on the pleadings did not affect the state-law claims.[4]

After the close of discovery, Streicher, Milwaukee County, and WCMIC moved for partial summary judgment, attacking the Estate's § 1983 claim both on the merits and based on Streicher's assertion of qualified immunity. *See* R. 29 & 30. The undisputed facts, they argued, showed that Streicher's conduct did not amount to deliberate indifference or criminal recklessness sufficient to violate the Fourteenth Amendment. *See* R. 30 at 4–9; R. 37 at 2–9. They argued further that, even if Streicher's conduct had violated the Constitution, he would still be protected by qualified immunity because at the time of the collision, it was not clearly established beyond all debate that his conduct was unconstitutional. *See* R. 30 at 10–12; R. 37 at 10–12.

The district court denied the summary-judgment motion. R. 41; SA at 25. The court identified the "key question" as whether Streicher had "sufficient knowledge" of the danger posed by his conduct that "one can infer he intended to inflict the resultant injury." *Id.* at 12; SA at 36 (citation omitted). Although the relevant underlying facts were undisputed, the court found there were "competing inferences from those facts" and questions about "Streicher's credibility." *Id.* at 12; SA at 36. In the district court's view, a reasonable jury could infer an intent to inflict harm based on Streicher's "lack of attention to the road for such a long period" and the

---

[4] Since that time, however, the parties have resolved the state-law claims and have filed a stipulation of partial dismissal in the district court with respect to those claims under Fed. R. Civ. P. 41. *See* R. 49. The stipulation expressly excluded any claims under federal law and thus does not affect this appeal. *Id.*

notion that "he must have known about the extreme risks his inattention posed." *Id.* at 15; SA at 39.

The district court then "defer[red] on the question of qualified immunity." *Id.* at 11; SA at 35. It reasoned that whether the law at the time of the collision clearly established that Streicher's actions were unconstitutional should "be determined after the facts are clarified" at trial. *Id.* at 20; SA at 44. This appeal followed.

## SUMMARY OF ARGUMENT

A government officer like Streicher has qualified immunity against civil lawsuits unless (1) he violates a person's constitutional rights and (2) the right was clearly established at the time of the violation. Neither condition is met here.

1. Streicher did not violate Stinson's Fourteenth Amendment right to substantive due process. That doctrine typically forbids only deliberate abuses of power by government officials. But when, as here, an officer causes a fatal car collision in a non-emergency situation, deliberate indifference may rise to the level of a due process violation, provided the officer's conduct was egregious enough to shock the conscience and support an inference that the officer intended to inflict the injury. *Flores v. South Bend,* 997 F.3d 725, 729–30 (7th Cir. 2021).

Streicher's actions here do not rise to that level. He was distracted while driving, drove straight from a right-turn-only lane through a red light, and collided with Stinson's car in an intersection. He was not speeding, was not intoxicated, and testified that he did not recall seeing the red light or seeing Stinson's vehicle before impact. While his actions were admittedly negligent, there is no evidence of deliberate indifference, let alone to a degree that would shock the conscience.

2. Even if Streicher had violated Stinson's constitutional rights, he would still possess qualified immunity unless the right was "clearly established" at the time of the collision in January 2020. *See Plumhoff v. Rickard,* 572 U.S. 765, 778–79 (2014). The law must have placed the question "beyond debate" so that any reasonable officer in Streicher's shoes would have understood that his conduct was unconstitutional. *Id.* This typically requires an earlier "closely analogous case" finding a violation based on specific conduct similar to Streicher's. *See Escobedo v. Bender,* 600 F.3d 770, 780 (7th Cir. 2010).

As of January 2020 (and still today), no authority had established that Streicher's conduct, or conduct like it, was unconstitutional. On the contrary, the closest analogue at the time, *Hill v. Shobe,* had found no violation even though the officer's conduct there was more egregious than Streicher's. 93 F.3d 418, 420–21 (7th Cir. 1996). Neither *Hill* nor any other relevant authorities put Streicher on notice that his actions were unconstitutional.

The district court erred in sending the first issue to a jury and in deferring the second issue until after trial. It should instead have granted Streicher's motion for summary judgment based on qualified immunity. This Court should reverse and remand with instructions to dismiss the substantive due process claim against Streicher.

## STANDARD OF REVIEW

This Court reviews summary-judgment rulings *de novo,* "drawing [its] own conclusions of law and fact from the record." *McGuire v. United Parcel Serv.,* 152 F.3d 673, 676 (7th Cir. 1998). Likewise, questions that "require the application of

constitutional principles to historical fact" generally receive *de novo* review. *Coulter v. Gilmore,* 155 F.3d 912, 917 (7th Cir. 1998).

Summary judgment is warranted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A *material* fact is one that could affect the outcome of the lawsuit. *Contreras v. Chicago,* 119 F.3d 1286, 1291–92 (7th Cir. 1997). A factual dispute is *genuine* only if a reasonable factfinder could find in favor of the non-movant on the evidence presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In applying the summary-judgment standard, a court construes the facts in the light most favorable to the party opposing the motion. *Omnicare, Inc. v. UnitedHealth Grp.,* 629 F.3d 697, 705 (7th Cir. 2011). But this does not require the court to grant every inference requested by the non-movant, only "reasonable ones that are supported by the record." *Id.* at 704. Further, any inference must rest on admissible evidence, as opposed to mere "speculation or conjecture." *Grant v. Trustees of Indiana Univ.,* 870 F.3d 562, 568 (7th Cir. 2017). Ultimately, to avoid summary judgment, the non-movant must present "evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010).

## ARGUMENT

Government officials possess qualified immunity from civil suit "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). In *Saucier v. Katz,* 533 U.S. 194 (2001), the Supreme Court articulated a two-part test to determine whether qualified immunity is available: First, do the alleged facts,

taken in the light most favorable to the plaintiff, show that the defendant officer violated a constitutional right? Second, even if they do, was the specific constitutional right being asserted "clearly established" at the time of the incident, such that any reasonable officer would have known his actions were unconstitutional? 533 U.S. at 201–02. Courts may address the questions in either order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

If the answer to either question is "no," then the officer maintains qualified immunity. *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005). In this case, the answer to both questions is "no."

## A. Streicher Has Qualified Immunity Because He Did Not Violate Stinson's Substantive Due Process Rights.

Streicher is entitled to qualified immunity, in the first place, because the undisputed facts on summary judgment establish that he did not violate Stinson's constitutional rights. No reasonable factfinder could conclude otherwise.

### 1. A Substantive Due Process Violation Typically Requires a Deliberate Abuse of Power that Shocks the Conscience.

The Fourteenth Amendment's due process clause provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. 14. In addition to guaranteeing fair process, the Supreme Court has interpreted the clause to safeguard certain substantive rights. *See, e.g., Daniels v. Williams,* 474 U.S. 327, 331–32 (1986). In general terms, "substantive due process" protects the individual from the arbitrary exercise, oppressive use, and abuse of government power. *Id.* Historically, the concept has "applied to *deliberate* decisions by government officials to deprive a person of life, liberty, or property." *Id.* at 331. Because the concept of substantive due process is open-

13

ended, the Supreme Court "has always been reluctant to expand" its scope and exercises "the utmost care whenever we are asked to break new ground in this field." *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992).

In general, the Fourteenth Amendment forbids "only *deliberate* action intended to harm another." *Bublitz v. Cottey,* 327 F.3d 485, 491 (7th Cir. 2003) (emphasis in original). Negligence or lack of care by a government official does not violate substantive due process. *Daniels,* 474 U.S. at 330. The notion of a deprivation, or of an abuse of power, connotes more than mere negligence. *Id.* Relatedly, the due process clause is not intended to "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* at 332. The Fourteenth Amendment is not a "font of tort law" to be imposed by the federal courts upon the states. *Id.*

In *County of Sacramento v. Lewis,* the Supreme Court applied these principles to a case in which a police officer caused a fatal car crash while pursuing a speeding motorcyclist who refused to pull over. 523 U.S. 833, 836–37 (1998). The Court reiterated that the "core of the concept" of due process is "protection against arbitrary action" by the government. *Id.* at 845. Arbitrary action in the constitutional sense encompasses "only the most egregious official conduct," that which "shocks the conscience." *Id.* at 846. As an example, the Court pointed to a case where officers forcibly pumped a suspect's stomach to obtain evidence. *Id.* (discussing *Rochin v. California,* 342 U.S. 165 (1952)). The Court held that the officer's conduct in *Lewis* did not rise to a level that was conscience-shocking. *Id.* at 854.

*Lewis* provided a framework for analyzing car collisions caused by government officials, as well as substantive due process claims more generally. The Court

14

envisioned a "culpability spectrum." *Id.* at 849. At one end, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* In short, negligence is never enough to shock the conscience.

At the other end of the spectrum, an officer who acts with a purpose to cause some unjustified injury is "most likely" to shock the conscience and violate due process. *Id.* For example, the Court held that where a police officer was engaged in a high-speed chase, as in *Lewis*, "intent to harm suspects" is always necessary to find a constitutional violation. *Id.* at 854.

Between these two extremes is a "middle range" involving something more than negligence but less than fully purposeful conduct. *Id.* at 849. The *Lewis* Court acknowledged the "possibility" that some conduct in this range—for example, deliberately indifferent conduct toward a pretrial detainee—might violate substantive due process if it is "egregious enough." *Id.* But this is a matter for "closer calls" dependent upon "an exact analysis of the circumstances" and "the totality of the facts" in each case. *Id.* at 849–50. As Justice Scalia pointed out in concurrence, the Court "expressly left open" whether, outside the custodial setting, anything less than intentional conduct can ever violate substantive due process. *Id.* at 863 (Scalia, J., concurring in judgment).

### 2. In Non-Emergency Situations, Deliberate Indifference May Suffice If It Shocks the Conscience and Supports an Inference that the Official Intended to Do Harm.

This Court's due process decisions, including those addressing car accidents caused by public officials, have adhered to *Lewis's* basic framework. The overarching question is whether the conduct in question constitutes an abuse of power that shocks the conscience. *Bublitz,* 327 F.3d at 490. Neither negligence nor even gross

negligence is enough. *McDowell v. Lansing,* 763 F.3d 762, 766 (7th Cir. 2014) (citing *Lewis,* 523 U.S. at 848–49, and *Archie v. Racine,* 847 F.2d 1211, 1219–20 (7th Cir. 1988) (en banc)). Moreover, in cases involving high-speed chases or other emergency situations, anything short of an "intent to cause harm" fails to shock the conscience. *Id.* at 767. A "purpose to cause harm" is the "*sine qua non* of liability" in such cases. *Schaefer v. Goch,* 153 F.3d 793, 798 (7th Cir. 1998).

In non-emergency situations, however, it is possible to establish that a public official violated the Constitution with something short of actual intent—*i.e.,* a state of mind falling in the "middle range" posited in *Lewis*. The standard in the Seventh Circuit is whether the government official acted with "criminal recklessness" or "deliberate indifference," which are equivalent formulations. *Hill,* 93 F.3d at 421. Under that standard, a public official who caused a motor vehicle accident is not constitutionally liable absent a showing that "the official knew an accident was imminent but consciously and culpably refused to prevent it." *Id.*

A plaintiff seeking to prove that an official acted with the requisite culpability "faces a difficult task." *Flores,* 997 F.3d at 729. Deliberate indifference "poses a 'high hurdle and an exacting standard.'" *Stockton v. Milwaukee Cty.,* 44 F.4th 605, 615 (7th Cir. 2022) (citation omitted); *see also Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) ("*Lewis* establishes a heavy burden."). The standard is subjective, so it is not enough to argue that the official "*should have known* of the danger his actions created." *Hill,* 93 F.3d at 421 (emphasis added). Rather, evidence of actual knowledge is required, *id.,* though not necessarily "'smoking gun' proof." *Flores,* 997 F.3d at 729.

Nor is it sufficient to prove that the official acted in the face of a "recognizable but generic risk to the public" or that he knew, for example, that "driving at high speed at night without lights could have potentially fatal consequences." *Hill,* 93 F.3d at 421. Instead, the official must have had knowledge of an imminent accident, not just a general risk posed by his conduct. *Id.* Otherwise, due process would impermissibly devolve into a "body of general federal tort law." *Id.* at 422.

"Shocks the conscience" is still the touchstone of liability. *Bublitz,* 327 F.3d at 490. Importantly, "not every deliberately indifferent action will rise to the 'constitutionally shocking level.'" *Id.* (citation omitted); *see also Armstrong v. Squadrito,* 152 F.3d 564, 581 (7th Cir. 1998) ("[D]eliberately indifferent conduct may not always shock the conscience."). To violate the Constitution, a defendant must display more than just deliberate indifference; his conduct also must be "conscience-shocking." *Bublitz,* 327 F.3d at 490. For the due process clause protects against "only the most egregious official conduct." *Id.* at 489–90. "Cases abound" in which the courts have found that government action, even though "thoroughly disapproved of," did not shock the conscience. *Tun v. Whitticker,* 398 F.3d 899, 902 (7th Cir. 2005). Further, because the conscience-shocking standard is designed to limit the scope of substantive due process, application of the standard is frequently a legal question for the court rather than a factual question for the jury. *See Terrell v. Larson,* 396 F.3d 975, 981 (8th Cir. 2005) (en banc) (citations omitted).

The "key question" is whether one can infer from the facts that the official "intended to inflict the resultant injury." *Flores,* 997 F.3d at 729. In this way, deliberate indifference is a "proxy for intent." *Hill,* 93 F.3d at 421*; see also Stockton,* 44 F.4th at 615 ("Deliberate indifference occupies a space slightly below intent.").

Any lesser degree of culpability cannot support a due process claim, as the Constitution offers no protection against "unintended loss of life" caused by an official's "lack of due care." *Hill,* 93 F.3d at 421.

Although the deliberate-indifference standard is not "subject to mechanical application" and "demands an exact analysis of circumstances" in each case, *Lewis,* 523 U.S. at 850, prior decisions within this Circuit help to fill in its contours. And they illustrate how high a hurdle a plaintiff must clear to establish deliberate indifference egregious enough to shock the conscience and to permit an inference of intent to inflict harm.

In *Hill,* an on-duty police officer, Wallace Shobe, was driving "well over the speed limit" after midnight without activating his headlights, emergency lights, or siren. 93 F.3d at 420. He was not responding to any emergency. *Id.* Officer Shobe ran a red light and crashed into the car that Robert Hill was driving, resulting in Hill's death. *Id.* Hill's estate, like Stinson's, claimed that the officer "knew that such reckless driving could cause a fatal collision" with another driver. *Id.* But this Court found no due process violation because, despite using the label "recklessness," the plaintiff's claim was "grounded in negligence." *Id.* at 421. The facts alleged did not permit an inference that Shobe "intended to inflict the resultant injury" or that he "[did] not care whether [Hill] lives or dies." *Id.* (internal punctuation and citations omitted). The Court ordered dismissal of the complaint. *Id.* at 422.

In *Bublitz,* several law-enforcement officers were pursuing the car of a fleeing suspect. 327 F.3d at 486–87. Another, off-duty officer, David Durant, became aware of the pursuit on his radio and offered to help. *Id.* at 487. Durant deployed a "Stinger Spike System," which punctured the suspect's tires, causing his car to

veer to the right and strike a passing vehicle. *Id.* The collision killed Rebekah Bublitz and her child. *Id.* This Court granted summary judgment for the officers. *Id.* at 492. Even assuming the case was governed by the deliberate-indifference standard (an issue this Court did not need to decide), this Court held that "[a]t most . . . Durant may have been negligent." *Id.* Although the case was tragic, there was no evidence from which one could conclude the defendants "intended to cause a collision that would include the vehicles of innocent bystanders." *Id.*

The district court followed these precedents in *Jones v. Chicago,* No. 04-cv-3742, 2008 WL 4153679 (N.D. Ill. Sep. 2, 2008). The police officers in *Jones* moved past a traffic jam by driving their cruiser westbound in the eastbound lane, accelerating as they drove. *Id.* at *1. They struck two children walking between the cars stuck in traffic, injuring one and killing the other. *Id.* The officers said they did not see the children until the instant before the collision. *Id.* at *4. The district court granted summary judgment for the officers. It recognized that the officers, like Streicher, had caused the accident by their "decision to ignore the traffic laws in a non-emergency context." *Id.* at *5 n.3. But their conduct was not so shocking as to support an inference that they intended to inflict the injury. *Id.* at *4. Therefore, the district court concluded that Seventh Circuit precedent "mandate[d]" summary judgment. *Id.* at *5.[5]

---

[5] See also *Lewis v. Henderson,* where the district court granted judgment on the pleadings in favor of an officer who, in a non-emergency situation, was speeding at 78 mph toward an on-ramp, made an illegal lane change, drove partly onto the shoulder, and struck a pedestrian. No. 1:21-cv-1186, 2022 WL 4552460, at *1 (S.D. Ind. Sep. 29, 2022). According to the allegations in the complaint, the district court found that the officer, like Streicher, was negligent, careless, and diverted his view from the road. *Id.* at *4. But this was insufficient to plead a constitutional violation. *Id.* The district court's ruling is currently on appeal before this Court under the caption *Lisby v. Henderson,* Appeal No. 22-2867.

By contrast, this Court held that the facts alleged in the complaint in *Flores* were sufficient to state a substantive due process claim. 997 F.3d at 727. There, Officer Gorny decided to drive to a non-emergency, routine traffic stop, although no one had requested his help. *Id.* at 728. Unlike Streicher, Gorny "roared through a residential neighborhood" at speeds between 78 and 98 mph, two to three times the speed limit, only intermittently using his lights and sirens. *Id.* He then sped through an intersection, despite having an obstructed view and in disregard of the red light. *Id.* He crashed into Erica Flores's car, killing her. *Id.* The Court found this a "far more troubling picture" than the facts in *Hill. Id.* at 730. Officer Gorny's conduct—including "driving blind through an intersection at 78 to 98 miles per hour"—was extreme and potentially shocking to the conscience. *Id.*

The Court in *Flores* pointed to two other cases from the Third and Tenth Circuits where the facts shocked the conscience. *Id.* In *Browder v. Albuquerque,* a police officer sped home after work in his squad car, with his emergency lights on, at 66 mph for almost nine miles through eleven city intersections, all for his own pleasure. 787 F.3d 1076, 1080 (10th Cir. 2015). At the last intersection the officer pressed the gas pedal and ran a red light, resulting in a fatal collision. *Id.* at 1077. The evidence later revealed that the officer hit his brakes and then accelerated two seconds before the impact. *Browder v. Casaus,* 675 F. App'x 845, 847 (10th Cir. 2017) (unpublished). In turn, in *Sauers v. Borough of Nesquehoning,* a police officer launched a high-speed chase at over 100 mph based on a minor traffic offense.

905 F.3d 711, 715 (3d Cir. 2018). He lost control of his cruiser around a curve, spun out, crossed the center line, and caused a fatal crash. *Id.*[6]

### 3. Streicher's Conduct—Driving While Distracted and Violating the Rules of the Road—Was Not Deliberately Indifferent and Does Not Shock the Conscience.

Measured by the deliberate-indifference standard and the case law applying that standard discussed above, no reasonable jury could conclude from the undisputed factual record here that Streicher acted with deliberate indifference, let alone in so egregious a manner as to shock the conscience and permit an inference that he intended to cause Stinson's injuries. At most, Streicher was negligent or grossly negligent, but negligence does not violate the due process clause. *Bublitz,* 327 F.3d at 491; *Hill,* 93 F.3d at 421.

Streicher admittedly violated the rules of the road, running a red light and driving straight from a right-turn-only lane. R. 33 at 7; SA at 16. But such violations are unfortunately common and do not rise to the level of a due process violation because they do not establish criminal recklessness. *Cf. Jones,* 2008 WL 4153679, at *5 n.3 (finding no constitutional violation even though officers violated traffic laws by driving the wrong way, *i.e.*, westbound in the eastbound lane). Unlike the officers in *Flores, Browder,* and *Sauers,* Streicher was not speeding before or at the time of the collision with Stinson. R. 33 at 5; SA at 14. Nor was he intoxicated. *Id.* at 6; SA at 15. Streicher is unaware of any controlling case finding a due process

---

[6] Another example of conscience-shocking behavior—cited by this Court in *Bublitz*, 327 F.3d at 491—is *Checki v. Webb*, where officers in an unmarked car tailgated the plaintiffs, chased them at speeds over 100 mph, and then physically abused them at a roadblock. 785 F.2d 534, 535–36 (5th Cir. 1986). In short, they used their police car to "terrorize a civilian." *Id.* at 538.

violation arising from a car crash where the officer was not speeding or under the influence (or both).

The facts on summary judgment, construed in Stinson's favor, do show that Streicher was driving distracted. The district court found that "he was looking away from the road" before the impact; he was driving "while not paying attention to the road." R. 41 at 13, 21; SA at 37, 45. He may have been distracted by his computer screen or his phone (it does not matter which one it was), though he testified that he was using neither at the time of the collision. R. 33 at 6; SA at 15. Streicher also testified that he did not see Stinson, Stinson's car, or the red light. *Id.* at 7; SA at 16. There was thus no evidence that he "knew an accident was imminent," *Hill,* 93 F.3d at 421, only that he was distracted and inattentive. Those are the hallmarks of negligence rather than deliberation.

Streicher acknowledged that he *should have* seen the red light and stopped his vehicle. R. 33 at 8; SA at 17. But the deliberate-indifference standard is a subjective one, focused on what Streicher *actually* knew. *See Hill,* 93 F.3d at 421. Nor is it sufficient that Streicher knew—whether as a matter of common sense or from his training and experience as a law-enforcement officer—that violating the traffic laws and driving distracted could cause accidents, even fatalities. R. 33 at 3; SA at 12. Awareness of such a generic risk may support a finding of negligence, but not deliberate indifference. *Hill,* 93 F.3d at 421. If that were sufficient to establish a constitutional violation, it would turn the due process clause into a font of federal tort law. *Id.* at 422.

In the district court's view, however, because "Streicher looked away from the road for such a significant period while the traffic light was yellow or red," a jury

could infer that "he would have known his conduct was likely to result in harm," yet chose not to "abate his risky behavior," and thus violated the Constitution. R. 41 at 12; SA at 36. There are at least two major problems with this chain of inference. First, distraction, whether it lasted three seconds, ten seconds, or fifteen seconds, is still only distraction. Nothing about being distracted, even for fifteen seconds, supports an inference that Streicher "intended to inflict the resultant injury," which is the "key question." *Flores,* 997 F.3d at 729 (citation omitted).

Second, it is not enough for the jury to conclude that Streicher knew that his conduct was risky or was likely to cause harm. The Court rejected a similar argument in *Hill,* holding that even if it were proven that the officer "knew that driving at high speed at night without lights could have potentially fatal consequences," that would not support a finding of deliberate indifference. 93 F.3d at 421. Such knowledge may show negligence, but not criminal recklessness. *Id.*; *see also Durham v. Losleben,* 744 F. App'x 268, 270 (6th Cir. 2018) (unpublished) (finding no deliberate indifference even though defendant allegedly "knew, or should have known, that his conduct . . . created a significant risk and likelihood of serious injury and death to foreseeable motorists").

The law requires more than mere knowledge of a risk and the likelihood of harm; it demands proof that Streicher actually knew that "*an accident was imminent*" and yet deliberately chose not to prevent it, not caring whether the victim lived or died. *Hill,* 93 F.3d at 421 (emphasis added). There is no factual basis upon which a reasonable jury could make that inference.

Thus, it is not true that this case "falls somewhere between *Hill* and *Flores*" on the culpability spectrum, as the district court reasoned. R. 26 at 5; SA at 5.

Streicher's conduct was *less* egregious than the actions of the officer in *Hill,* who, unlike Streicher, was speeding at night for no reason without using his emergency lights or siren and without even having his headlights on. 93 F.3d at 420. And Streicher's conduct is a far cry from the actions found unconstitutional in *Flores,* where the officer was traveling two to three times the speed limit in a residential area when he "charged through" the intersection against a red light and with an obstructed view, 997 F.3d at 730; in *Browder,* where the officer sped through eleven intersections, then "ignored" a red light and "pressed the gas" just before impact, 787 F.3d at 1077; and in *Sauers*, where the officer engaged in a high-speed chase reaching speeds over 100 mph based on a minor traffic offense, 905 F.3d at 715.

Streicher did nothing comparable to the officers' actions in *Flores, Browder,* or *Sauers.* Indeed, his conduct was less culpable than the officer's behavior in *Hill,* where this Court found no constitutional violation. Streicher drove at or under the speed limit through an intersection while distracted, not seeing the red light or Stinson's approaching vehicle. Although the result was tragic (and led to criminal liability for Streicher under Wisconsin law), his conduct did not violate the Fourteenth Amendment.

## B.   Streicher Also Has Qualified Immunity Because Stinson's Asserted Constitutional Right was Not Clearly Established at the Time of the Collision.

Streicher did not violate Stinson's due process rights, but even if he had, Streicher would still possess qualified immunity because as of January 25, 2020, the date of the collision, it was not clearly established that Streicher's actions violated any of Stinson's constitutional rights. This is a sufficient and independent reason

to reverse the district court's denial of Streicher's motion for summary judgment on the Estate's § 1983 claim.

### 1. The Estate Must Show that Streicher's Conduct was Clearly Unconstitutional as of January 2020.

The doctrine of qualified immunity protects government officials from civil lawsuits "as long as their actions could reasonably have been thought consistent" with the plaintiff's constitutional rights. *Anderson,* 483 U.S. at 638. Stated differently, an official is protected unless he transgressed "clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser,* 933 F.3d at 701 (punctuation and citation omitted). Qualified immunity provides "ample room for mistaken judgments" and protects all but the "plainly incompetent and those who knowingly violate the law." *Purvis v. Oest,* 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

For a right to be clearly established, existing precedent at the time of the incident in question must have defined the "contours" of the right in a "sufficiently definite" manner that "any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff,* 572 U.S. at 778–79. The law must have placed the constitutional question "beyond debate." *Id.* at 779. Otherwise, that is, "if officers of reasonable competence could disagree," qualified immunity applies. *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

A court must not "define clearly established law at a high level of generality" because the "crucial question" is whether the official "acted reasonably *in the particular circumstances.*" *Plumhoff,* 572 U.S. at 779 (emphasis added); *see also Lopez v. Sheriff of Cook Cty.,* 993 F.3d 981, 988 (7th Cir. 2021) ("Determining

whether an officer violates clearly established law requires a look at past cases with specificity. The Supreme Court has time and again instructed lower courts not to define clearly established law at a high level of generality.") (internal punctuation and citations omitted).

Once a defendant asserts qualified immunity, the burden is on the plaintiff to show that the asserted constitutional right was clearly established at the time of the alleged violation. *Cibulka v. Madison,* 992 F.3d 633, 640 (7th Cir. 2021). There are two routes to make the required showing: First, the plaintiff may point to a "closely analogous case" that established the unconstitutionality of the officer's conduct. *Escobedo,* 600 F.3d at 780. This may take the form of controlling authority within this Circuit or a "robust consensus" of persuasive authorities. *Plumhoff,* 572 U.S. at 780.

Second, the plaintiff may show that the officer's actions were so obviously unconstitutional that no closely analogous precedent was needed to put a reasonable officer on notice. *Escobedo,* 600 F.3d at 780. Such cases are rare. *Leiser,* 933 F.3d at 704. This route requires the plaintiff to identify "a general constitutional rule already identified in the decisional law" that "applies with obvious clarity to the specific conduct in question." *Cibulka,* 992 F.3d at 640 (internal punctuation and citations omitted).

Under this case law, to rebut Streicher's assertion of qualified immunity, the Estate needed to establish that the unconstitutionality of Streicher's specific conduct was clearly established as of January 25, 2020, the date of the collision. The Estate did not and cannot do that.

### 2.    The District Court Wrongly "Deferred" this Issue.

Streicher made this argument in his summary-judgment motion, R. 30 at 10–12, but the district court declined to rule on whether pre-existing law clearly established the unconstitutionality of Streicher's conduct. *See* R. 41 at 19–21; SA at 43–45. The court held that this inquiry should wait until after trial so the jury could first "draw inferences" and decide whether the facts "established a constitutional violation" in the first place. *Id.* In its words, the district court "defer[red] on the question of qualified immunity." *Id.* at 11; SA at 35.

Deferral of this issue was erroneous for at least three reasons. First, there was no need to wait until after trial to decide it. Whether a right was clearly established is a pure "abstract issue of law." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (punctuation altered). Here, given the stipulated factual record, this question turns on an analysis of the pre-existing legal precedent, not on any facts to be determined at trial.

Second, a court may rule on the "clearly established" prong of the qualified-immunity test before considering whether there was any underlying constitutional violation. *See Pearson,* 555 U.S. at 236 (2009) (permitting courts to consider the *Saucier* factors in either order). Indeed, if the asserted right was not clearly established, that is the end of the analysis. *Cf. Sauers,* 905 F.3d at 718–23 (holding that, although plaintiff alleged a plausible due process violation, officer possessed qualified immunity because the law was not clearly established); *Posey v. Miro,* No. 11-cv-5660, 2014 WL 3843940, at *4 (N.D. Ill. Aug. 5, 2014) ("I need not decide whether [defendant's] conduct . . . violated [plaintiff's] due process rights because . . . no such right was clearly established at the time.").

Third, if the legal right in question was not clearly established, then the official has qualified immunity. Forcing him to go to trial anyway would largely negate that immunity. *See Mitchell,* 472 U.S. at 526 ("[Immunity] is effectively lost if a case is erroneously permitted to go to trial."). In this context, deferral is denial.

### 3.   As of January 2020, No Authority Had Clearly Established that Streicher's Conduct Was Unconstitutional.

The Supreme Court taught in *Lewis* that when an officer causes a collision with culpability falling in the "middle range" between negligence and intent, whether his actions shock the conscience "is a matter for closer calls." 523 U.S. at 849. One must consider the "totality of the facts in a given case" and perform "an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850 (citation omitted). Deliberate indifference that is shocking in one context may not rise to that level in a different set of circumstances. *Id.* Not every instance of deliberate indifference is egregious enough to shock the conscience in the constitutional sense. *Bublitz,* 327 F.3d at 490 (citing *Lewis,* 523 U.S. at 852).

In 1996, *Hill* set forth a general standard for deliberate indifference in a car-collision case involving a public official: the plaintiff must show that "the official knew an accident was imminent but consciously and culpably refused to prevent it." 93 F.3d at 421. But the articulation of a general standard does not give a reasonable officer in Streicher's shoes adequate notice of what specific conduct the standard prohibits. *See Leiser,* 933 F.3d at 702 (framing the relevant question as "whether the violative nature of *particular* conduct is clearly established") (citation omitted). A general standard is particularly inadequate where, as here, its

application depends on the facts of each case. *Cf. Plumhoff,* 572 U.S. at 779 (where Fourth Amendment standard "at a high level of generality" whose application "depends very much on the facts of each case" did not clearly establish that defendant's conduct was unreasonable).

To rebut Streicher's assertion of qualified immunity, the Estate would need to point to a pre-existing "closely analogous case," *Escobedo,* 600 F.3d at 780, establishing that Streicher's distracted driving and violations of the rules the road rose to the level of conscience-shocking deliberate indifference. As of January 2020 (and still today, for that matter), there was no such case within this Circuit.

The closest analogue was *Hill* itself, where the officer, like Streicher, ran a red light and crashed into another vehicle. 93 F.3d at 419. However, the officer in *Hill*, unlike Streicher, was speeding for no apparent reason; and, unlike Streicher, he was doing so at night without using his headlights, emergency lights, or siren. *Id.* For these reasons, the facts in *Hill* were, if anything, more egregious than Streicher's conduct. Yet, this Court held that no constitutional violation occurred in *Hill. Id.* at 420–22. Thus, *Hill* did not put a reasonable officer on notice that conduct like Streicher's was unconstitutional. On the contrary, the lesson a reasonable officer could have drawn from *Hill* was that distracted driving—although perhaps negligent, tortious, and even criminal—did not rise to the level of conscience-shocking deliberate indifference in the constitutional sense.

This Court's other cases as of January 2020 were consistent with that understanding of *Hill.* The officer who deployed the spikes in *Bublitz,* like Streicher, caused a fatal car accident, but this Court found that even if deliberate indifference was the appropriate standard, the evidence was insufficient to meet it. 327 F.3d

485. In *Carter v. Simpson,* an officer ran a red light at an intersection and killed another driver, but the Court found no constitutional violation because it found no evidence of intent to cause harm. 328 F.3d 948, 952 (7th Cir. 2003). Likewise, in *Steen v. Myers,* an officer caused a deadly accident while in pursuit of a suspect after a minor traffic stop, but this Court held that the officer did not violate the victims' due process rights because there was no evidence of intent to harm. 486 F.3d at 1024. Although *Carter* and *Steen* are distinguishable because the officers there, unlike Streicher, were responding to an emergency or pursuing a suspect, they would still be relevant to a reasonable officer's assessment of the law in January 2020.

In fact, the Tenth Circuit performed that assessment in 2009 and concluded that "the Seventh Circuit has been reluctant to apply any standard other than the intent-to-harm standard to police officers causing injury while performing their job." *Green v. Post,* 574 F.3d 1294, 1308 (10th Cir. 2009) (citing *Carter, Bublitz, Steen,* and *Schaefer*). And this Court itself reiterated in 2005 that "the scope of substantive due process is very limited" and courts should be "reluctant to expand the concept." *Tun*, 398 F.3d at 902–03 (citing, among other precedents, *Lewis* and *Bublitz*). "It is one thing," this Court explained, "to say that officials acted badly, even tortiously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation." *Id.* at 903.

A reasonable officer in Streicher's shoes in January 2020 would have been justified in concluding from these precedents that driving while distracted and violating the rules of the road, as Streicher did, would not rise to the level of conscience-shocking, unconstitutional conduct. Indeed, the district court reached a

similar conclusion in *Jones v. Chicago,* 2008 WL 4153679. The officers there "deci[ded] to ignore the traffic laws in a non-emergency context" and struck two pedestrians. *Id.* at *5 n.3. But the court concluded that "[e]xisting Seventh Circuit precedent mandate[d]" granting summary judgment to the officers. *Id.* at *5. The district court here should have reached the same conclusion.

Instead, in denying summary judgment, the district court relied largely on this Court's opinion in *Flores. See* R. 41 at 16; SA at 40. As the district court put it, *Hill* and *Flores* are "the Seventh's Circuit's bookends for which allegations are sufficient" to support a due process claim following an officer-caused collision. R. 26 at 3; SA at 3. In the district court's view, "this case falls somewhere between *Hill* and *Flores.*" *Id.* at 5; SA at 5. For the reasons given above, that conclusion was incorrect; Streicher's conduct was less egregious than the officer's actions in *Hill* and far from the facts alleged in *Flores.*

But even under the district court's reasoning, it does not follow that Streicher should lose qualified immunity. *Flores* was decided in May 2021, more than a year after the collision with Stinson. In January 2020, the only "bookend" was *Hill.* Therefore, *Flores* does not count when assessing what the law had clearly established at the time of Streicher's collision with Stinson. *See Plumhoff,* 572 U.S. at 779 (stating that later-decided cases should not be considered because they "could not have given fair notice to the officer") (punctuation and citation omitted).

Even broadening the analysis to include case law from other circuits as of January 2020 reveals no "robust consensus" of persuasive authority, *Plumhoff,* 572 U.S. at 780, that conduct like Streicher's violated substantive due process. On

the contrary, it further confirms that a reasonable officer at that time would not have regarded Streicher's actions as unconstitutional.

The courts of appeals took a variety of approaches to the application of the deliberate-indifference standard under *Lewis. See Green,* 574 F.3d at 1304–10 (surveying the case law and concluding that the law was not clearly established); *see also Durham,* 744 F. App'x at 271 (recognizing that in non-emergency situations "it is unsettled exactly where the line falls between merely tortious conduct and constitutionally deficient conduct").

But when confronted with officers' conduct that was analogous to—indeed, arguably worse than—Streicher's, several courts had concluded as of January 2020 that no constitutional violation occurred. *See, e.g., Green,* 574 F.3d at 1296–97, 1303–04 (holding that an officer who sped through an intersection in a non-emergency situation against a yellow light was negligent but not deliberately indifferent); *Durham,* 744 F. App'x at 269–70 (holding that fireman's speeding and crossing into the wrong lane while not responding to an emergency was not "the sort of egregious, conscience-shocking behavior that is required" to state a constitutional claim).

To be sure, the Third Circuit's opinion in *Sauers* and the Tenth Circuit's in *Browder* were already on the books in January 2020. But, as discussed above, the officers' actions in those cases were far more egregious than Streicher's conduct here. *See Browder,* 787 F.3d at 1077 (where defendant sped through city streets at over 60 mph for almost nine miles through eleven intersections, ignored a red light, and stepped on the gas pedal before impact); *Sauers,* 905 F.3d at 715 (where officer chased a suspect at over 100 mph based on a minor traffic offense). Further,

the court in *Sauers* ultimately affirmed dismissal of the lawsuit on qualified-immunity grounds because, even though the court found a constitutional violation, it recognized that the law was not clearly settled at the time of the incident. *Id.* Regardless, two out-of-circuit decisions with unanalogous facts hardly present a robust consensus of authority that could have given fair notice to an officer in Streicher's position.

As of January 2020, then, neither the law of this Circuit nor any consensus of cases from other circuits had placed the question here—the constitutionality of distracted driving like Streicher's—"beyond debate." *Plumhoff,* 572 U.S. at 779. Because, at a minimum, "officers of reasonable competence could disagree," *Malley,* 475 U.S. at 341, Streicher is entitled to qualified immunity.

### 4. Streicher's Conduct Was Not Obviously Unconstitutional.

Finally, this is not one of those "rare cases" where the public official's conduct is so egregious that its unconstitutionality would have been obvious to any reasonable officer without the need for any precedent on point. *See Leiser,* 933 F.3d at 702. This Court in *Leiser* gave two examples of such a case: *Hope v. Pelzer,* 536 U.S. 730, 739–46 (2002), where prison guards handcuffed an inmate to a hitching post for seven hours, exposed him to sun, deprived him of water, denied him bathroom breaks, and subjected him to other cruelty; and *Abbott v. Sangamon County,* 705 F.3d 706, 723–24 (7th Cir. 2013), where a police officer tased a nonviolent misdemeanant who did not respond to instructions to turn over after being tased a first time.

Both of those cases involved egregious, intentional abuses of power. Streicher's conduct exhibited nothing comparable. Even supposing for argument's sake

that he violated Stinson's due process rights, the unconstitutionality of his conduct was not so obvious as to put this case in the same category as *Hope* and *Abbott*.

## CONCLUSION

Streicher is entitled to qualified immunity because he did not violate any of Stinson's clearly established constitutional rights. The Court should therefore reverse and remand this case with instructions to enter summary judgment in Streicher's favor on the Estate's § 1983 substantive due process claim.

February 21, 2023.                    Respectfully submitted:

HANSEN REYNOLDS LLC

*s/Andrew A. Jones*
Andrew A. Jones
James F. Cirincione
John W. McCauley
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: (414) 455-7676
ajones@hansenreynolds.com
GRADY, HAYES & NEARY LLC
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive Waukesha, Wisconsin 53188
Phone: (262) 347-2001
tjd@ghnlawyers.com

*Attorneys for Defendant-Appellant Joel Streicher*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32 because, according to the word-count feature in Microsoft Word, the brief contains 10,006 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. 32(f).

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Georgia font for the body of the brief and 11-point Georgia font for footnotes.

Dated: February 21, 2023.

*s/Andrew A. Jones*
Andrew A. Jones
Counsel for Appellant

## CIRCUIT RULE 30(d) STATEMENT

The Appendix to this brief contains all the materials required by Circuit Rule 30(a) and (b).

Dated: February 21, 2023.

*s/Andrew A. Jones*
Andrew A. Jones
Counsel for Appellant

# SHORT APPENDIX

<u>Document</u>                                                                 <u>Page</u>

District Court Order, May 2, 2022, ECF No. 26 ........................................... SA 1

Agreed Statement of Facts with Respect to Motion for
Summary Judgment, July 1, 2022, ECF No. 33 ........................................... SA 10

Response to Plaintiffs' Proposed Statement of Facts with Respect
to Motion for Summary Judgment, August 12, 2022, ECF No. 39 ............. SA 19

District Court Order, October 18, 2022, ECF No. 41 .................................... SA 25

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ESTATE OF CAESAR STINSON and
CHIPO K. SAMVURA

                    Plaintiffs,                    Case No. 21-CV-1046-JPS

v.

MILWAUKEE COUNTY, JOEL R.
STREICHER, and WISCONSIN                           **ORDER**
COUNTY MUTUAL INSURANCE
CORPORATION,

                    Defendants.

This case comes before the Court on defendant Milwaukee County ("the County") and Wisconsin County Mutual Insurance Corporation ("WCMIC")'s motion for partial judgment on the pleadings, to which defendant Joel Streicher ("Streicher") (collectively, "Defendants") joined. ECF Nos. 8, 11. The plaintiffs in this case are the Estate of Caesar Stinson (the "Estate" or "Stinson") and Stinson's spouse, Chipo Samvura ("Samvura") (collectively, "Plaintiffs"). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(a). For the reasons explained below, the Court will grant the motions in part and deny them in part.

## 1.    LEGAL STANDARD

Once the pleadings are closed, a party may file a motion pursuant to Federal Rule of Civil Procedure 12(c) to challenge the sufficiency of the pleadings. These motions are evaluated under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of*

*Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations and quotations omitted).

2.    **RELEVANT FACTS**

On January 25, 2020, during daylight hours, Streicher, an officer with the Milwaukee County Sheriff's Department, got into his patrol car and drove northbound on Tenth Street. As he approached the intersection of Tenth Street and State Street, he looked down at his car's computer screen while maintaining a speed of about thirty miles per hour. He is not sure how long he looked down, but it was long enough to miss the four-second yellow light at the intersection of Tenth and State, and long enough to miss the first eleven seconds of the red light that followed. It was long enough that he did not see the west-bound traffic crossing State Street, and long

enough that he did not notice that he was in the right-hand turn lane. Streicher drove straight into the intersection, collided with Stinson's car, and killed him. Streicher did not brake.

Plaintiffs allege that Streicher had lived this nightmare before. On July 25, 2018, Streicher exited I-43 South at West Highland Avenue and found himself in the left-hand turn lane. Instead of turning left, Streicher drove straight through the intersection and collided with another car that was properly driving through the intersection in the center lane. There are no allegations that a death occurred in that crash.

**3.    ANALYSIS**

**3.1    Substantive Due Process Claim – Estate of Stinson**

In order to successfully state a substantive due process claim arising from Stinson's death, the Estate must allege that Streicher acted "with criminal recklessness—which is the same as deliberate indifference." *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021) (citations and quotations omitted). Deliberate indifference requires the offending officer to have "actual knowledge of impending harm which he consciously refused to prevent." *Id.* (citing *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996)). "Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions." *Id.* In other words, an allegation that a police officer had time to deliberate strengthens the claim that he did, in fact, know of the risk of the harm. "The key question is whether the officer had sufficient knowledge of the danger such that one can infer he intended to inflict the resultant injury." *Id.* (citations and quotations omitted).

*Hill* and *Flores* stand as the Seventh Circuit's bookends for which allegations are sufficient to state a substantive due process claim arising

from a death caused by a police officer's car crash. In *Hill*, the Seventh Circuit held that "motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation . . . absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it." 93 F.3d at 421. The plaintiff in *Hill* alleged that a police officer drove "well over" the speed limit at midnight with no headlights, flashers, or sirens; the court determined that this was insufficient to permit an inference that the police officer acted with intent to cause harm. *Id.* The court explained that it was not enough to allege that the officer, "like any reasonable person, knew that driving at high speed at night without lights could have potentially fatal consequences." *Id.* The court dismissed the complaint.

By contrast, in *Flores*, the Seventh Circuit found a plausible allegation of deliberate indifference where the complaint alleged that an officer, responding to a routine traffic stop for which nobody called backup, drove between fifty and eighty miles over the speed limit in a residential area just before dawn, only intermittently used his flashers and sirens, and drove through a red light at an intersection with an obstructed view of cross traffic, resulting in the death of the plaintiff, an innocent and law-abiding driver. *Flores*, 997 F.3d at 730. The court explained that "the law does not provide a shield against constitutional violations for state actors who consciously take extreme and obvious risks." *Id.* It concluded that the officer's conduct "reflected deliberate indifference to the obvious risk he created when he sped through residential areas and launched himself through an intersection, against the light, without the ability to see or adjust to cross-traffic." *Id.* at 734.

This case falls somewhere between *Hill* and *Flores*. Streicher was on patrol at the time, but he was not responding to any emergency. He looked down at his computer for at least fifteen seconds but continued driving at a speed of thirty miles per hour. As described above, he did not see the yellow light, the red light, the cross-traffic, or the fact that he was in a turn-only lane. He drove straight into the intersection, hit Stinson's vehicle, and killed him.

Defendants make much of the allegations that Streicher did not see, and therefore did not know, that the light was yellow, then red, then that there was cross-traffic, and so on. They argue that these allegations bely any intent on Streicher's part to cause harm. But one does not need to know, for a fact, that a light is red to know, for a fact, that driving without looking will cause an accident. If Streicher had been driving blindfolded, then he also would not have seen the red light and cross-town traffic. The question is whether Streicher looked down at his computer for such a long period of time *knowing* that it would result in harm to others, or whether he was merely negligent. Plaintiffs have offered one prior car crash in Streicher's past to illustrate that he, perhaps more than most, ought to have appreciated the importance of careful driving. The allegations in the complaint are sufficient to permit an inference that Streicher acted with intent to cause harm; the question of whether, in fact, he did is best left for the fact-finding portion of the case.

### 3.2    Substantive Due Process Claim – Chipo Samvura

Defendants move to dismiss Samvura's derivative § 1983 claim for loss of consortium. "The relationships that define the nuclear family . . . are protected" under the Constitution. *Niehus v. Liberio*, 973 F.2d 526, 533 (7th Cir. 1992) ("There would be no novelty in interpreting 'liberty' to embrace

the right of sexual companionship in marriage."). However, in *Niehus*, the court declined a plaintiff's invitation to rule that "consortium is liberty, period," and thus denied her substantive due process claim based on her loss of consortium. While the court acknowledged the liberty interest in certain aspects of marriage, it explained that "consortium" included a range of behaviors from raking leaves ("lesser services") to "all spousal services" (i.e., those "greater deprivations"), and the former "is not a liberty protected by the Fourteenth Amendment." *Id.* at 534. But when called on to draw a distinction between which consortium activities rise to a liberty interest and which do not, the court demurred: it noted that supplemental jurisdiction pursuant to 42 U.S.C. § 1367 would enable a spouse to join a state consortium claim to a constitutional claim, thus permitting a federal court to hear both. *Id.* The Court concluded that this "will make the question whether consortium is a constitutionally protected liberty largely an academic one in future cases." *Id.*

The future is here, and the Court is tasked with considering this largely academic question. Since *Niehus*, the Seventh Circuit has overturned an earlier decision permitting parents to recover for the loss of their relationship with an adult child. *Russ v.* Watts, 414 F.3d 783, 790 (7th Cir. 2005) (overturning *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)). *Russ* is not squarely on point, but it acknowledges a guiding principle: "Most courts . . . have expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." *Id.* at 787–88 (citing cases). The *Russ* court left open the possibility that "minor children's need for the guidance and support of their parents warrants sharply different constitutional treatment." *Id.* at 790 (citations omitted); *see also Estate of Fiebrink v. Armor*,

Case No. 18-CV-832-JPS, 2019 WL 1980625, at *11 (E.D. Wis. May 3, 2019) (permitting a minor to move forward with a § 1983 claim for the loss of his mother considering *Russ*'s dicta and the lack of Seventh Circuit precedent). A year after *Russ*, the Seventh Circuit offered additional guidance, in dicta, in *Thompson v. City of Chicago*, in which it declined to reinstate a wife's § 1983 claim based on her familial relationship with the deceased, noting that she had not alleged that the deceased was killed "for the specific purpose of terminating [his] relationship with his family." 723 F.3d 444, 452 n.25 (7th Cir. 2006) (quoting *Russ*, 414 F.3d at 790).

Against this backdrop, the district courts in this circuit have generally eschewed derivative § 1983 claims.[1] For example, in *Pitzer v. City of East Peoria, Illinois*, the estate of a man killed by police brought a "single federal claim" under § 1983, but, if successful on the § 1983 claim, wished to pursue damages for loss of consortium, society, and companionship. 597 F. Supp. 2d 806, 810 (C.D. Ill. 2009). The district court determined that there was no conflict in applying Illinois state law regarding damages in survival actions to § 1983 claims because § 1983 did "not address what types of damages are available to the estate of a deceased claimant whose life was terminated by unconstitutional state action." *Id.* In so holding, the court determined that it did not risk "unwarranted expansion of the concept of substantive due process under the Fourteenth Amendment," as cautioned *Niehus* and *Russ*, because "no one is asking this Court to recognize a

---

[1] Plaintiffs cite district court cases from the Third Circuit, which rely, in large part, on the now-overturned principles set forth in *Bell*, and thus which are less persuasive to the Court today. *See e.g.*, *Pahle v. Colebrookdale Township*, 227 F. Supp. 2d 361, 382–83 (E.D. Penn. 2002).

constitutional cause of action for [the deceased]'s wife or minor children."
*Id.*

Here, Plaintiffs *are* asking the Court to recognize a constitutional cause of action for Stinson's wife. In light of the foregoing analyses, the Court concludes that is bound by *Niehus*, which rejected a very similar type of claim as the one that Samvura seeks to bring. 973 F.2d at 533–34. Relatedly, *Russ* and *Thompson* indicate that, to be actionable, a family member's constitutional violation based on official action ought to be "directed at the [familial] relationship"—otherwise, courts might risk "constitutionalizing all torts against individuals who happen to have families." *Russ*, 414 F.3d at 790.

Based on the guidance in these cases, the Court will grant the motion to dismiss this claim. This dismissal should not work a hardship on Samvura, whose losses should be more than adequately addressed by her state law loss of consortium claim, which is Count Three in this lawsuit. Nevertheless, the dismissal will operate without prejudice. The Court in *Niehus* did not foreclose the possibility of a spouse bringing a § 1983 claim for loss of the "greater deprivations" of consortium, 973 F.2d at 534, and, given the lack of an on-point holding on this issue, it is not evident what the outer limits of Samvura's rights are—the Court cannot say with certainty that she could never allege such a violation.

### 3.3    State Law Indemnification Claim – WCMIC

Wisconsin state law permits direct actions against insurers "covering liability to others for negligence[.]" Wis. Stat. § 632.24. "The terms of the statute do not authorize [a] plaintiff to bring a separate action against WCMIC under § 1983 for alleged constitutional violations." *Akright v. Graves,* Case No. 05-C-821, 2006 WL 897759, at *2 (E.D. Wis. April 3, 2006).

Plaintiffs have brought claims of negligence and constitutional liability against WCMIC, but it can only be sued for negligence. Thus, Counts One and Two, which are predicated on constitutional liability, will be dismissed against WCMIC.

**4.     CONCLUSION**

For the reasons explained above, Defendants' motion for judgment on the pleadings will be granted in part and denied in part.

Accordingly,

**IT IS ORDERED** that Defendants' first motions for judgment on the pleadings, ECF Nos. 8, 11, be and the same are hereby **GRANTED in part and DENIED in part**, as stated in the text of this Order;

**IT IS FURTHER ORDERED** that Count Two of Plaintiffs' complaint be and the same is hereby **DISMISSED without prejudice** as to Defendants Milwaukee County and Joel R. Streicher;

**IT IS FURTHER ORDERED** that Count Two of Plaintiffs' complaint be and the same is hereby **DISMISSED with prejudice** as to Defendant Wisconsin County Mutual Insurance Corporation; and

**IT IS FURTHER ORDERED** that Count One of Plaintiffs' complaint be and the same is hereby **DISMISSED with prejudice** against only Defendant Wisconsin County Mutual Insurance Corporation.

Dated at Milwaukee, Wisconsin, this 2nd day of May, 2022.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ESTATE OF CEASAR STINSON and
CHIPO K. SAMVURA,

      Plaintiffs,

v.                            Case No. 21-CV-1046-JPS

MILWAUKEE COUNTY, _et al._,

      Defendants.
_____

## AGREED STATEMENT OF FACTS WITH RESPECT
## TO MOTION FOR SUMMARY JUDGMENT
_____

      Pursuant to Fed. R. Civ. P. 56, Civil L.R. 56, and this Court's Trial Scheduling Order (ECF No. 25), defendants Milwaukee County and Wisconsin County Mutual Insurance Company (the "Milwaukee County defendants"), defendant Joel Streicher ("Streicher") (collectively, "defendants"), and plaintiffs, the Estate of Ceasar Stinson (the "Estate") and Chipo Samvura (collectively, "plaintiffs"), submit the following agreed statement of facts with respect to the pending motion for summary judgment. The parties certify that they first met and conferred with respect to this agreed statement of facts on May 27, 2022 and that they have continued to communicate regarding this submission since that date.

## A.    Jurisdiction and Venue.

      The Estate asserts a claim against defendants under the United States Constitution pursuant to 42 U.S.C. § 1983. (ECF No. 1-1 (Complaint), ¶¶ 47-54.) As a result, this Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1331. Plaintiffs also assert additional claims against defendants under Wisconsin law. (Complaint, ¶¶ 61-69.) This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28

U.S.C. § 1367(a). Defendants stipulate to causal negligence on the part of Streicher as to plaintiffs' state law claims.

This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because the events underlying plaintiffs' claims occurred within this judicial district. (*See*, *generally*, *infra*.)

### B.     The Parties.

Ceasar Stinson ("Stinson") was an adult resident of the State of Wisconsin. (Complaint, ¶ 1; ECF No. 7 (Answer of Milwaukee County Defendants), ¶ 1; ECF No. 10 (Answer of Joel Streicher), ¶ 1.) Chipo Samvura was the spouse of Stinson. (Complaint, ¶ 1; Answer of Milwaukee County Defendants, ¶ 1; Answer of Joel Streicher, ¶ 1.)

Defendant Milwaukee County is a municipal corporation organized under the laws of the State of Wisconsin. (Complaint, ¶ 3; Answer of Milwaukee County Defendants, ¶ 3.) Defendant Wisconsin County Mutual Insurance Corporation ("WCMIC") is a domestic insurance company that issued a policy of liability insurance to Milwaukee County subject to the terms, conditions, and exclusions set forth therein. (Complaint, ¶ 5; Answer of Milwaukee County Defendants, ¶ 5.)

Defendant Joel Streicher was on January 25, 2020 an employee of the Milwaukee County Sheriff's Office ("MCSO"). (Complaint, ¶ 4; Answer of Joel Streicher, ¶ 4.) Defendants stipulate that Streicher was acting under color of law and within the scope of his employment during the events at issue on that date.

### C.     The Facts Underlying Plaintiffs' Claims.

At approximately 11:11:02 a.m. on January 25, 2020, Streicher and Stinson were involved in an automobile collision that killed Stinson (the "Collision"). (Complaint, ¶ 10;

Answer of Joel Streicher, ¶ 10; Transcript from the Deposition of Joel Streicher, taken on May 23, 2022 ("Streicher Tr."), Exhibit 11.)[1]

Prior to the Collision, Streicher had between 23 and 24 years of service in law enforcement, had been trained on the traffic laws, had probably investigated over one hundred crashes, knew more about the law than the average person, and knew that the law has variations of intent. (Streicher Tr. at 16:20-24, 19:5-16 & 19:18 – 20:2.)

Prior to the Collision, Streicher was aware that a person can engage in unlawful conduct by driving recklessly and endangering a life without intending to kill someone because the person driving knew or should have known that their conduct could lead to injury. (Streicher Tr. at 24:18-21 & 25:14-21.)

Prior to the Collision, Streicher knew that driving while distracted could lead to accidents and accidents could lead to death. (Streicher Tr. at 48:16-20 & 29:16-22.)

Prior to the Collision, Streicher was trained that he was not allowed to let his computer distract from his driving and that driving distracted by his computer could lead to "bad things." (Streicher Tr. at 44:18-24, 45:6-19 & 47:19-25.)

In 2007, Streicher was involved in a search of a private residence without lawful authority; as a result, he was issued a written reprimand for violating department policy. (Streicher Tr. at 106-12.)[2]

Prior to the Collision, Streicher knew that violating the rules of the road could lead to collisions. On July 25, 2018, Streicher violated the rules of the road by proceeding straight through an intersection from a left turn only lane causing an accident.

---

[1] Copies of the Streicher Tr. and any referenced exhibits from the deposition are attached to the Declaration of Andrew A. Jones, dated July 1, 2022 ("Jones Decl.").

[2] Defendants agree that this proposed finding is factually accurate, but they dispute that the proposed finding is admissible as evidence or material to the issues on summary judgment.

3

Specifically, after stopping at a red light at the intersection, Streicher drove straight into the intersection while in a left turn only lane, causing a collision with the car in the lane to his right, which had the right of way to proceed into that lane. (Streicher Tr. at 130:22 – 134:17; Streicher Tr., Exhibit 7.)

In October 2018, Streicher was identified by Wisconsin Department of Justice agents for soliciting an undercover agent for sex over the internet; as a result, he plead guilty to a misdemeanor charge of disorderly conduct on April 8, 2019 and was thereafter disciplined for violating MCSO policies. (Streicher Tr. at 117-25.)[3]

At the time of the Collision on January 25, 2020, Streicher was on duty with the MCSO and was driving an unmarked MCSO Chevy Tahoe squad car. (Streicher Tr. at 61:16-17, 79:24 – 80:4 & 88:21-25.) Streicher's duty assignment that day was to patrol a portion of the interstate freeway system in Milwaukee County. (Declaration of Joel Streicher, dated June 27, 2022 ("Streicher Decl."), ¶ 2.) At the time of the Collision, Streicher was driving from the Milwaukee County Safety Building to the entrance ramp onto northbound I-43 at W. Highland Avenue for the purpose of continuing his patrol duties. (Streicher Decl., ¶ 3.)

Streicher began work that day at about 10:00 a.m., went to a Jimmy John's at approximately 10:45 a.m., then went to the Milwaukee County Safety Building to use the bathroom. While at the Safety Building, Streicher tried to get on the internet using various apps on his phone, including Zoosk – a dating app. Streicher then returned to his squad shortly after 11:00 a.m. He opened Zoosk on his phone sometime either just before entering the Safety Building or after leaving the Safety Building as he approached or

---

[3] Defendants agree that this proposed finding is factually accurate, but they dispute that the proposed finding is admissible as evidence or material to the issues on summary judgment.

reached his squad. (Streicher Tr. at 88:21 – 91:7, 92:7 – 94:19 & 207:10-23.) That morning, before he went on duty, Streicher had been involved in an explicit conversation with a female acquaintance via the Zoosk app. At 10:45 a.m., the woman messaged Streicher as part of the explicit conversation, and he replied at 10:52 a.m. (Streicher Tr. at 172:19 – 175:8.)

The Collision occurred at the intersection of N. 10th Street and W. State Street. (Streicher Tr. at 103:10-22.) At the time of the Collision, Streicher was driving northbound on N. 10th Street, and Stinson was driving westbound on W. State Street. (Streicher Tr. at 103:10-22.)

Milwaukee Police Officer William Hanney, assigned to the Specialized Patrol Division of the Milwaukee Police Department as a member of the Crash Reconstruction Unit, prepared a Collision Analysis Report. (Streicher Tr., Exhibit 8.) Officer Hanney concluded that Streicher had 14.5 to 15 seconds of either a yellow light or a red light (4 seconds of yellow and 11 to 11.5 seconds of red) to slow and stop his vehicle to avoid the Collision. (Streicher Tr. at 157:20 – 158:2 & 160:21 – 161:16; Streicher Tr., Exhibit 8.) According to Officer Hanney's report, Streicher proceeded northbound on N. 10th Street towards a red light for roughly 489-511 feet, travelling at 29-30 miles per hour. Streicher did not brake or take any other action to slow his squad or avoid the Collision, and he entered the intersection in a right turn only lane and against a red light. (Streicher Tr. at 157:20 – 158:2 & 160:21 – 161:16; Streicher Tr., Exhibit 8.)

The speed limit on N. 10th Street between Wells Street and Highland Avenue is thirty miles per hour. (Streicher Decl., ¶ 4.) As Streicher drove northbound on N. 10th Street immediately prior to the Collision, he was driving 29-30 miles per hour. (Streicher Tr. at 50:3-5.) Stinson was travelling approximately 24-27 miles per hour prior to the

Collision. (Streicher Tr., Exhibit 8.) Streicher did not have his emergency lights or siren on, as he was not responding to an emergency call. (Streicher Decl., ¶ 5.)

At the time of the Collision, Streicher was not under the influence of alcohol, drugs, or any other intoxicating substance. (Streicher Tr. at 54:11-19.)

As he drove northbound on N. 10th Street, Streicher testified he looked at the screen of the computer in his squad car to check for new assignments or activity. (Streicher Tr. at 57:11-25 & 65:18-19.) Streicher testified he does not recall exactly how long or how many times he looked at the computer in his squad car as he drove northbound on N. 10th Street, but, according to Streicher, he was not using the computer immediately prior to or at the time of the Collision. (Streicher Tr. at 52:16 – 53:8, 56:24 – 57:4 & 150:2-10.) Streicher recalled looking at his computer, describing it "as a look, a glance: more than a glance but not a long extended . . . look at the computer." (Streicher Tr. at 52:16 – 53:14.) Streicher's personal cellular phone was unlocked, but, according to Streicher, he was not using the phone immediately prior to or at the time of the Collision. (Streicher Tr. at 42:13-14 & 19-22, 97:11-13, 167:4-8 & 169:21-24.) At his deposition, Streicher testified he did not recall telling investigating officers that "he was looking away from the road prior to the crash." (Streicher Tr. at 150:12-21.)

Streicher testified he is not aware of anything that obstructed his view of the intersection of N. 10th Street and State Street as he traveled northbound on No. 10th Street or as he entered the intersection immediately prior to the Collision. (Streicher Tr. at 37:15-18 & 40:10-16.) Streicher was in the right-hand lane on N. 10th Street, a right turn only lane, when he entered the intersection. (Streicher Tr. at 136:4-7.) The exact time of the Collision was 11:11:02 a.m. (Streicher Tr., Exhibit 11.)

The display on Streicher's phone turned on at 11:10:36 a.m., 26 seconds before the Collision. (Streicher Tr., Exhibit 11.) Streicher could unlock his phone either by entering a code or by facial recognition. (Streicher Tr. at 89:19 – 90:1.) Streicher testified it was more likely that he looked at the phone to unlock it than he entered the code to do so. (Streicher Tr. at 169:21-24.) At 11:11:06 a.m., four seconds after the Collision, an application launched on the phone. (Streicher Tr., Exhibit 11.) According to the official investigation into the Collision, the phone showed no evidence of user interaction between when it was unlocked and when the app launched following the Collision. (Streicher Tr., Exhibit 11.)

Following the Collision, Streicher got out of his squad and walked over to look at the crash and knew it was a bad crash. (Streicher Tr. at 58:17 – 59:11.) Streicher told the first officer he talked to at the scene that he was not sure but that he thought he (Streicher) may have run the red light. (Streicher Tr. at 200:21 – 202:9.)

Streicher testified he violated two rules of the road in connection with the Collision: he ran a red light and continued straight through the intersection even though he was in a right turn only lane. (Streicher Tr. at 137:2-11.)

Streicher does not recall seeing that the light for N. 10th Street at the intersection of N. 10th Street and W. State Street was red when he entered the intersection. (Streicher Tr. at 33:17-18, 143:8-12 & 162:20-23.)

MCSO Sergeant Michael Krznarich and Deputy Joann Sowin both stated to investigators that while at the scene of the Collision, Streicher told them he was not sure but that he thought he ran a red light. (Streicher Tr., Exhibit 9.)

Streicher did not see Stinson or the car Stinson was driving prior to Collision. (Streicher Tr. at 101:15-21.) Streicher also did not see a car travelling eastbound on W.

State Street that drove through the intersection roughly five seconds before he entered the intersection. (Streicher Decl., ¶ 6.)

Streicher testified that as he approached the intersection, he should have been aware that he had a red light and that he should have stopped for the light. (Streicher Tr. at 159:11-23.)

Stinson died at the scene as a result of the Collision. (Complaint, ¶ 10; Answer of Joel Streicher, ¶ 10.)

As a result of the Collision, the Milwaukee County Sheriff recommended that Streicher be terminated from his employment with the MCSO; thereafter, Streicher resigned his employment in lieu of termination. (Streicher Tr. at 63-64.)[4]

Streicher was charged with and pleaded guilty to one count of homicide by negligent operation of a vehicle in violation of Wis. Stat. § 940.10(1) as a result of the Collision. (Complaint, ¶ 43; Answer of Joel Streicher, ¶ 43; Streicher Tr., Exhibit 16.) In pleading guilty, Streicher knowingly and voluntarily admitted to the facts as alleged in the criminal complaint. (Streicher Tr. at 181:18-22.) An element of the crime to which Streicher pleaded guilty was that his operation of a motor vehicle created a substantial and unreasonable risk of death or great bodily harm to another. (*See* Wis. Stat. § 939.25(1).)

---

[4] Defendants agree that this proposed finding is factually accurate, but they dispute that the proposed finding is admissible as evidence or material to the issues on summary judgment.

Dated at Milwaukee, Wisconsin this 1st day of July, 2022.

**HANSEN REYNOLDS LLC**

_s/ Andrew A. Jones_____
Andrew A. Jones
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Phone: (414) 455-7676
Facsimile: (414) 273-8476
ajones@hansenreynolds.com

*Attorneys for Defendants Milwaukee
County and Wisconsin County Mutual
Insurance Corporation*

**GRADY, HAYES & NEARY LLC**

_s/ Thomas J. Donnelly_____
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive
Waukesha, Wisconsin 53188
Phone: (262) 347-2001
Facsimile: (262) 347-2205
tjd@ghnlawyers.com

*Attorneys for Defendant Joel Streicher*

**GINGRAS, THOMSEN & WACHS,
LLP**

_s/ Mark L. Thomsen_____
Mark L. Thomsen
219 N. Milwaukee Street, Suite 520
Milwaukee, Wisconsin 53202
Phone: (414) 935-5482
Facsimile: (414) 763-6413
mthomsen@gtwlawyers.com

*Attorneys for Plaintiffs*

9

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ESTATE OF CEASAR STINSON and
CHIPO K. SAMVURA,

     Plaintiffs,

v.                                             Case No. 21-CV-1046-JPS

MILWAUKEE COUNTY, *et al.*,

     Defendants.
_____

## RESPONSE TO PLAINTIFFS' PROPOSED STATEMENT OF FACTS
## WITH RESPECT TO MOTION FOR SUMMARY JUDGMENT
_____

Pursuant to Fed. R. Civ. P. 56, Civil L.R. 56, and this Court's Trial Scheduling Order (ECF No. 25), defendants Milwaukee County and Wisconsin County Mutual Insurance Company (the "Milwaukee County defendants") and defendant Joel Streicher ("Streicher") (together, "defendants") submit this response to the proposed statement of facts in opposition to defendants' motion for partial summary judgment submitted by plaintiffs, the Estate of Ceasar Stinson (the "Estate") and Chipo Samvura (together, "plaintiffs") (ECF No. 35).

1.     On October 26, 2018 Streicher was identified by Wisconsin Department of Justice agents for soliciting prostitutes using Skipthegames.com, pled guilty on April 8, 2019 and was disciplined for violating Milwaukee County Sheriff's Rules (Dkt. 32-1, Streicher Dep. at 117-125; Sweatt Decl. Exhs. B and C).[1]

---

[1] Consistent with this Court's Trial Scheduling Order, plaintiffs presented their proposed statement of facts in narrative, paragraph form. In responding to the proposed statement of facts, defendants have numbered each separate proposed finding of fact for ease of reference.

**RESPONSE:**  Not disputed. However, the facts underlying this proposed finding are inadmissible as evidence, at minimum, pursuant to Fed. R. Evid. 401, 402, 403, and 404 and are not material to the issues raised by defendants' motion for partial summary judgment. In addition, this proposed finding is duplicative of the parties' Agreed Statement of Facts. (ECF No. 33 at 4 & n.3.)

2.     On January 25, 2020, Streicher did not recall whether any of the apps he was using prior to the collision related to looking for prostitutes (Dkt. 32-1, Streicher Dep. at 119-120).

**RESPONSE:**  Disputed. Plaintiffs mischaracterize Streicher's testimony, as he specifically testified that the app he recalled using that morning was Zoosk, a dating app, and that he did not use any apps relating to prostitution. (ECF No. 32-1 (Streicher Tr.) at 12:2-12, 119:23 – 120:8 & 207:24 – 209:13.) Regardless, it is undisputed that, according to the official investigation into the collision involving Streicher and Stinson (the "Collision"), Streicher's phone showed no evidence of user interaction in the time period between when it was unlocked 22 seconds before the Collision and 4 seconds following the Collision. (ECF No. 33 at 7; *see also* ECF No. 36-1 (Hanney Tr.) at 27:5-14.) This means that no apps were opened or in use (including the Zoosk app), the screen was not touched, no calls were made or received, no texts were sent or received, and the phone was not used or manipulated in any way in that time period. (Transcript from the deposition of Eric Draeger, taken on July 21, 2022 ("Draeger Tr."), at 13:4-17, 15:18-24, 16:7 – 17:2, 17:20 – 18:1, 18:8-13, 79:9-13 & 80:18-23.)[2]

---

[2] A true and complete copy of the Draeger Tr. is attached as Exhibit G to the Supplemental Declaration of Andrew Jones, dated August 12, 2022.

2

3.     The morning of the collision, Streicher had a Zoosk app conversation with a woman he had never met who said: "Good morning babe," at 10:39 am, Streicher responded saying: "Turn around and bend over," at 10:45 am, she responded: "Yes, sir," at 10:52 am, Streicher said: "Grab your ankles," and she said: "Oh fuck...yes sir." (Dkt. 32-1, Streicher Dep. at 172-174, Dep. Exh. 12).

**RESPONSE:**  Disputed in part. Not disputed that the referenced conversation occurred between Streicher and a woman whom he had never met in person using the Zoosk dating app. However, the woman sent the initial message referenced in the proposed finding ("Good morning babe") at 02:52:21 a.m. PDT (UTC-7) (or 03:52:21 a.m. CST (UTC-6)); Streicher responded at 06:39:48 a.m. PDT (07:39:48 a.m. CST), not at 10:39 a.m. CST as alleged by plaintiffs; and the final message from the woman referenced in the proposed finding was sent at 10:33:33 a.m. PDT (11:33:33 a.m. CST), some 41 minutes after Streicher's last message at 09:52:15 a.m. PDT (10:52:15 a.m. CST) and 31 minutes following the Collision. (ECF No. 36-4.)

4.     At 11:10:40 Streicher likely looked at the phone unlocking it 22 seconds before impact (Dkt. 32-1, Streicher Dep. at 167-169, Dkt. 32-5, Dep. Exh. 11).

**RESPONSE:**  Disputed in part. This proposed finding is duplicative, in part, of the parties' Agreed Statement of Facts. (ECF No. 33 at 7.) Not disputed that the display on Streicher's phone turned on at 11:10:36 a.m., 26 seconds before the Collision, and that the phone unlocked at 11:10:40 a.m., 22 seconds before the Collision. It is also not disputed that Streicher could unlock his phone either by entering a code or by facial recognition (ECF No. 31-1 (Streicher Tr.) at 89:19 – 90:1) and that Streicher testified it was more likely that he looked at the phone to unlock it than he entered the code to do so (*id.* at 169:21-24). However, Streicher has no memory of unlocking the phone himself (*id.*

3

at 167:4-17), and it is possible the phone unlocked on its own (Draeger Tr. at 11:2-18). Regardless, it is undisputed that, according to the official investigation into the Collision, Streicher's phone showed no evidence of user interaction in the time period between when it was unlocked 22 seconds before the Collision and 4 seconds following the Collision. (ECF No. 33 at 7; *see also* ECF No. 36-1 (Hanney Tr.) at 27:5-14.) This means that no apps were opened or in use (including the Zoosk app), the screen was not touched, no calls were made or received, no texts were sent or received, and the phone was not used or manipulated in any way in that time period. (Draeger Tr. at 13:4-17, 15:18-24, 16:7 – 17:2, 17:20 – 18:1, 18:8-13, 79:9-13 & 80:18-23.)

5.    To date, Streicher, who was not physically impaired or on drugs or drunk, cannot or will not account for these 15 to 15.5 seconds. (Dkt. 32-1, Streicher Dep. p. 54; Sweatt Decl., Exh. A, Hanney Dep. p. 77).

**RESPONSE:**  Disputed in part. Not disputed that Streicher was not under the influence of alcohol, drugs, or any other intoxicating substance at the time of the Collision. (ECF No. 33 at 6.) This portion of the proposed finding is duplicative of the parties' Agreed Statement of Facts. (*Id.*) With respect to the remainder of this proposed finding, Streicher cannot recall what he looked at as he drove north on N. 10th Street other than to glance at his squad computer. (*Id.*; ECF No. 31-1 (Streicher Tr.) at 52:20 – 53:5.) Streicher testified he does not recall exactly how long or how many times he looked at the computer in his squad car as he drove north on N. 10th Street, but, according to Streicher, he was not using the computer immediately prior to or at the time of the Collision. (ECF No. 33 at 6; ECF No. 31-1 (Streicher Tr.) at 52:16 – 53:8, 56:24 – 57:4 & 150:2-10.) Streicher recalled looking at his computer, describing it "as a look, a glance: more than a glance but

not a long extended . . . look at the computer." (ECF No. 33 at 6; ECF No. 31-1 (Streicher Tr.) at 52:16 – 53:14.)

6.     Streicher did not identify anything that obstructed his view of the lights. (Dkt. 32-1, Streicher Dep. p. 52).

**RESPONSE:**  Not disputed.

7.     Streicher has not explained where he was looking in the seconds before the crash. (Dkt. 32-1, Streicher Dep. pp. 142-143).

**RESPONSE:**   Disputed. Streicher cannot recall what he looked at as he drove north on N. 10th Street other than to glance at his squad computer. (ECF No. 31-1 (Streicher Tr.) at 52:20 – 53:5; *see also id.* at 142:15 – 143:12.) Streicher testified he does not recall exactly how long or how many times he looked at the computer in his squad car as he drove north on N. 10th Street, but, according to Streicher, he was not using the computer immediately prior to or at the time of the Collision. (ECF No. 33 at 6; ECF No. 31-1 (Streicher Tr.) at 52:16 – 53:8, 56:24 – 57:4 & 150:2-10.) Streicher recalled looking at his computer, describing it "as a look, a glance: more than a glance but not a long extended . . . look at the computer." (ECF No. 33 at 6; ECF No. 31-1 (Streicher Tr.) at 52:16 – 53:14.)

8.     Prior to the deadly crash, Streicher knew that violating the rules of the road could lead to collisions and injury. (Dkt. 32-1, Streicher Dep. pp. 24-25).

**RESPONSE:**   Not disputed. This proposed finding is duplicative of the parties' Agreed Statement of Facts. (ECF No. 33 at 3.)

9.     As part of the investigation, Officer William Hanney shut down the street and drove it at that speed to see how long that 11 seconds is. He testified, "it's a long time." (Sweatt Decl., Exh. A, Haney Dep. p 58).

**RESPONSE:** Not disputed that Officer Hanney so testified.

10.    Gold medals are won and crowds cheer before that time passes. (Sweatt Decl., Exh. A, Hanney Dep. p. 57).

**RESPONSE:**  Not disputed that Officer Hanney so testified.

Dated at Milwaukee, Wisconsin this 12th day of August, 2022.

**HANSEN REYNOLDS LLC**

_s/ Andrew A. Jones_____
Andrew A. Jones
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: (414) 455-7676
Facsimile: (414) 273-8476
ajones@hansenreynolds.com

*Attorneys for Defendants Milwaukee County and Wisconsin County Mutual Insurance Corporation*

**GRADY, HAYES & NEARY LLC**

_s/ Thomas J. Donnelly_____
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive
Waukesha, Wisconsin 53188
Phone: (262) 347-2001
Facsimile: (262) 347-2205
tjd@ghnlawyers.com

*Attorneys for Defendant Joel Streicher*

6

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ESTATE OF CEASAR STINSON and
CHIPO K. SAMVURA,

                          Plaintiffs,

v.

MILWAUKEE COUNTY, JOEL R.
STREICHER, and WISCONSIN
COUNTY MUTUAL INSURANCE
CORPORATION,

                          Defendants.

Case No. 21-CV-1046-JPS

**ORDER**

## 1.      BACKGROUND

On the morning of January 25, 2020, Joel Streicher ("Streicher"), then an officer with the Milwaukee County Sheriff's Department, was operating his department SUV when he collided with a vehicle operated by Ceasar Stinson ("Stinson"). Stinson died at the scene as a result of the crash. Stinson's estate and his wife Chipo Samvura ("Samvura") (collectively, "Plaintiffs") subsequently brought suit in state court. Defendants Milwaukee County and Wisconsin County Mutual Insurance Corporation ("WCMIC"), with Streicher's consent, removed the action to the Eastern District of Wisconsin, and it was assigned to this Court. ECF Nos. 1 and 5. Plaintiffs made a substantive due process claim arising from Stinson's death and a substantive due process claim arising from Samvura's loss of consortium with Stinson, as well as common-law negligence claims for wrongful death and loss of consortium, a vicarious liability claim against

Milwaukee County, and a claim for punitive damages. ECF No. 1-1 at 16–20.

Milwaukee County, WCMIC, and Streicher (collectively, "Defendants") subsequently filed motions for partial judgment on the pleadings. ECF Nos. 8 and 11. As is pertinent here, Defendants moved on the basis that Stinson had not sufficiently alleged a substantive due process violation because Streicher's conduct did not meet the applicable deliberate indifference standard. *See id.* The Court denied Defendants' motion in this regard, finding that, on a Rule 12(c) posture, "[t]he allegations in the complaint are sufficient to permit an inference that Streicher acted with intent to cause harm" as the deliberate indifference standard requires. ECF No. 26 at 3–5. The Court further stated that "[t]he question of whether, in fact, he did is best left for the fact-finding portion of the case." *Id.* On July 1, 2022, Defendants filed a motion for partial summary judgment on Stinson's substantive due process claim. ECF No. 29. The motion is now fully briefed, ECF Nos. 30, 34, and 37, and will be denied.

## 2.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*,

815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005). Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## 3.    RELEVANT FACTS

The parties have submitted a joint statement of material facts, and statements of their disputes thereto, as required by the Court's trial scheduling order. ECF Nos. 33, 35, 39. The Court adopts the relevant and undisputed facts as set forth in the parties' joint statement of facts, with minor, non-substantive edits, and notes factual disputes where appropriate.

Defendant Joel Streicher was on January 25, 2020 an employee of the Milwaukee County Sheriff's Office ("MCSO"). ECF No. 33 at 2. Defendants stipulate that Streicher was acting under color of law and within the scope of his employment during the events at issue on that date. *Id.*

At 11:11:02 a.m. on January 25, 2020, Streicher and Stinson were involved in an automobile collision that killed Stinson (the "collision"). *Id.*

Prior to the collision, Streicher had between 23 and 24 years of service in law enforcement, had been trained on the traffic laws, had probably investigated over one hundred crashes, knew more about the law

than the average person, and knew that the law has variations of intent. *Id.* at 3. Streicher was aware that a person can engage in unlawful conduct by driving recklessly and endangering a life without intending to kill someone because the person driving knew or should have known that their conduct could lead to injury. *Id.* Streicher knew that driving while distracted could lead to accidents and accidents could lead to death. *Id.* Streicher was trained that he was not allowed to let his computer distract from his driving and that driving distracted by his computer could lead to "bad things." *Id.* (quoting ECF No. 32-1 (Streicher deposition transcript) at 13–14).

Prior to the collision, Streicher knew that violating the rules of the road could lead to collisions. *Id.* On July 25, 2018, Streicher violated the rules of the road by proceeding straight through an intersection from a left turn only lane, causing an accident. *Id.* Specifically, after stopping at a red light at the intersection, Streicher drove straight into the intersection while in a left turn only lane, causing a collision with the car in the lane to his right, which had the right of way to proceed into that lane. *Id.* at 4.[1]

At the time of the collision on January 25, 2020, Streicher was on duty with the MCSO and was driving an unmarked MCSO Chevy Tahoe squad SUV (the "Tahoe"). *Id.* Streicher's duty assignment that day was to patrol a portion of the interstate freeway system in Milwaukee County. *Id.* At the

---

[1]The parties have agreed on two other instances of conduct preceding the collision, namely that Streicher (1) was previously subject to departmental reprimand for conduct related to the search of a residence, and (2) previously pled guilty to a misdemeanor charge of disorderly conduct related to solicitation for sex, an offense for which he also received departmental discipline. ECF No. 33 at 3–4; *see also* ECF No. 35 (Plaintiffs' statement of disputed facts) at 1. Defendants agree these previous acts occurred but object that these acts are immaterial to the claims at issue and inadmissible. ECF No. 33 at 3–4, nn.2 and 3.

time of the collision, Streicher was driving from the Milwaukee County Safety Building to the entrance ramp onto northbound I-43 at West Highland Avenue for the purpose of continuing his patrol duties. *Id.*

Streicher began work that day at about 10:00 a.m., went to a Jimmy John's at approximately 10:45 a.m., then went to the Milwaukee County Safety Building to use the bathroom. *Id.* While at the Safety Building, Streicher tried to get on the internet using various apps on his phone, including Zoosk, a dating app. *Id.* Streicher then returned to his Tahoe shortly after 11:00 a.m. *Id.*

He opened Zoosk on his phone sometime either just before entering the Safety Building or after leaving the Safety Building as he approached or reached his Tahoe. *Id.* at 4–5. That morning, before he went on duty, Streicher had been involved in an explicit conversation with a female acquaintance via the Zoosk app. *Id.* at 5. At 10:45 a.m., the woman messaged Streicher as part of the explicit conversation, and he replied at 10:52 a.m. *Id.*[2]

---

[2]Plaintiffs' statement of disputed facts appears to dispute the exact timeline on which the Zoosk conversation occurred, seemingly in an attempt to suggest Streicher was distracted by this conversation at the time of the collision. *See* ECF No. 35 at 1–2; *see also* ECF No. 34 at 6–7. Plaintiffs' "dispute" consists of laying out the exchange of messages via Zoosk without specifying the exact time at which each message was sent. ECF No. 35 at 1–2. They follow the message timeline with a statement that "[a]t 11:10:40[,] Streicher likely looked at the phone unlocking it 22 seconds before impact." *Id.* at 2. Defendants dispute Plaintiffs' characterization of the timeline. ECF No. 37 at 3.

The record confirms that:
- The woman first messaged Streicher via Zoosk on January 25, 2020 at 2:25 a.m. Pacific Daylight Time, which was 3:25 a.m. Central Standard Time (CST) on that date;
- Streicher messaged the woman at 7:39 a.m. CST;
- The woman messaged Streicher at 10:45 a.m. CST;
- Streicher messaged the woman at 10:52 a.m. CST; and

The collision occurred at the intersection of N. 10th Street and W. State Street. *Id.* At the time of the collision, Streicher was driving northbound on North 10th Street, and Stinson was driving westbound on West State Street. *Id.* Streicher was in the right-hand lane on North 10th Street, a right turn only lane, when he entered the intersection. *Id.* at 6.

Milwaukee Police Officer William Hanney, assigned to the Specialized Patrol Division of the Milwaukee Police Department as a member of the Crash Reconstruction Unit, prepared a Collision Analysis Report. *Id.* at 5. Officer Hanney concluded that Streicher had 14.5 to 15 seconds of either a yellow light or a red light—4 seconds of yellow and 11 to 11.5 seconds of red—to slow and stop his Tahoe to avoid the collision. *Id.*[3] According to Officer Hanney's report, Streicher proceeded northbound on North 10th Street towards a red light for roughly 489 to 511 feet, traveling at 29 to 30 miles per hour. *Id.* Streicher did not brake or take any other action to slow his Tahoe or avoid the collision, and he entered the intersection in a right turn only lane and against a red light. *Id.*

- The woman messaged Streicher at 11:33 a.m. CST, and numerous times thereafter on the same day.

ECF No. 36-4 (exhibit to Streicher deposition) at 2.

As stated later in the joint statement of facts, Streicher's phone display turned on 26 seconds prior to the collision, and his phone unlocked 22 seconds prior to the collision. The record confirms that although the woman did indeed message Streicher back after his 10:52 a.m. message, her message did not arrive until *after* the collision. The record further confirms that Streicher received no other messages on the Zoosk app in the moments before the collision. *See id.*

[3]The parties agree that, as part of the investigation of the collision, Officer Hanney shut down North 10th Street and drove it at the speed at which Streicher was going "to see how long that 11 seconds is." ECF Nos. 35 at 2 and 39 at 5–6. Hanney testified that "it's a long time." *Id.* However, the Court finds Officer Hanney's comments in this regard to be irrelevant at summary judgment; whether to credit his assessment about this duration of time is a jury question.

The speed limit on North 10th Street between Wells Street and Highland Avenue is thirty miles per hour. *Id*. As Streicher drove northbound on North 10th Street immediately prior to the collision, he was driving 29 to 30 miles per hour. *Id.* Stinson was travelling approximately 24 to 27 miles per hour prior to the collision. *Id.* at 5–6. Streicher did not have his emergency lights or siren on, as he was not responding to an emergency call. *Id.* at 6.

At the time of the collision, Streicher was not under the influence of alcohol, drugs, or any other intoxicating substance. *Id.* Streicher testified he is not aware of anything that obstructed his view of the intersection of North 10th Street and State Street as he traveled northbound on North 10th Street or as he entered the intersection immediately prior to the collision. *Id.*

Streicher testified that, as he drove northbound on North 10th Street, he looked at the screen of the computer in his Tahoe to check for new assignments or activity. *Id.* Streicher testified he does not recall exactly how long or how many times he looked at the computer in his Tahoe as he drove northbound on North 10th Street, but, according to Streicher, he was not using the computer immediately prior to or at the time of the collision. *Id.* Streicher recalled looking at his computer, describing it "as a look, a glance: more than a glance but not a long extended . . . look at the computer." *Id.* (quoting ECF No. 32-1 (Streicher deposition transcript) at 16, 18). Streicher's personal cellular phone was unlocked, but, according to Streicher, he was not using the phone immediately prior to or at the time of the collision. *Id.*

At his deposition, Streicher testified he did not recall telling investigating officers that "he was looking away from the road prior to the crash." *Id.*[4]

The display on Streicher's phone turned on at 11:10:36 a.m., 26 seconds before the collision. *Id.* at 7. The phone unlocked 22 seconds before the collision. ECF Nos. 39 at 4 and 35 at 2. Streicher could unlock his phone either by entering a code or by facial recognition. ECF No. 33 at 7. Streicher testified it was more likely that he looked at the phone to unlock it than he entered the code to do so. *Id.* At 11:11:06 a.m., four seconds after the collision, an application launched on the phone. *Id.* According to the official investigation into the collision, the phone showed no evidence of user interaction between when it was unlocked and when the app launched following the collision. *Id.*[5]

---

[4]Plaintiffs state that "[t]o date, Streicher, who was not physically impaired or on drugs or drunk, cannot or will not account for these 15 to 15.5 seconds" [when the light in the intersection was either yellow or red] and that he "has not explained where he was looking in the seconds before the crash." ECF No. 35 at 2. Defendants dispute this characterization by pointing to Streicher's testimony that (1) he does not remember exactly how long or how many times he looked at the computer in his Tahoe as he traveled northbound on North 10th Street, (2) he was not using the computer "immediately prior to or at the time of the collision" and (3) he does not recall what he was looking at, "other than to glance at his squad car computer," as he traveled. ECF No. 39 at 4–5.

[5]Plaintiffs state that "Streicher likely looked at the phone unlocking it 22 seconds before impact." ECF No. 35 at 2. Defendants agree that the phone unlocked 22 seconds before impact but respond to Plaintiffs' dispute of fact by stating that "Streicher has no memory of unlocking the phone himself, and it is possible that the phone unlocked on its own." ECF No. 39 at 3–4. Defendants further highlight that Streicher's phone

> showed no evidence of user interaction . . . between when it was unlocked 22 seconds before the collision and 4 seconds following the collision. . . . This means that no apps were opened or in use (including the Zoosk app), the screen was not touched, no calls were made or received, no texts were sent or received, and the phone was not used or manipulated in any way in that time period.

Following the collision, Streicher got out of his Tahoe and walked over to look at the crash and knew it was a bad crash. *Id.* Streicher told the first officer he talked to at the scene that he was not sure but that he thought he (Streicher) may have run the red light. *Id.* MCSO Sergeant Michael Krznarich and Deputy Joann Sowin both stated to investigators that while at the scene of the collision, Streicher told them he was not sure but that he thought he ran a red light. *Id.* at 7.

Streicher does not recall seeing that the light for North 10th Street at the intersection of North 10th Street and West State Street was red when he entered the intersection. *Id.* Streicher did not see Stinson or the car Stinson was driving prior to collision. *Id.* Streicher also did not see a car traveling eastbound on West State Street that drove through the intersection roughly five seconds before he entered the intersection. *Id.* at 7–8.

Streicher testified that as he approached the intersection, he should have been aware that he had a red light and that he should have stopped for the light. *Id.* at 8. Streicher testified he violated two rules of the road in connection with the collision: he ran a red light and continued straight through the intersection even though he was in a right turn only lane. *Id.* at 7.

Stinson died at the scene as a result of the collision. *Id.* at 8. As a result of the collision, the Milwaukee County Sheriff recommended that Streicher be terminated from employment with the MSCO; thereafter, Streicher

---

*Id.* at 4. (citing ECF No. 38-1, deposition transcript of Eric Draeger, a detective in the Milwaukee Police Department Digital Forensics High Technology Unit).

resigned his employment in lieu of termination. *Id.*[6] Also as a result of the collision, Streicher was charged with and pleaded guilty to one count of homicide by negligent operation of a vehicle in violation of Wis. Stat. § 940.10(1). *Id.* In pleading guilty, Streicher knowingly and voluntarily admitted to the facts as alleged in the criminal complaint. *Id.* An element of the crime to which Streicher pleaded guilty was that his operation of a motor vehicle created a substantial and unreasonable risk of death or great bodily harm to another. *Id.* (citing Wis. Stat. § 939.25(1)).

**4.    ANALYSIS**

Defendants[7] move for summary judgment on that basis that the undisputed facts demonstrate Streicher's conduct does not evince the mental state—deliberate indifference or criminal recklessness—required to make a Fourteenth Amendment substantive due process claim. ECF No. 30 at 4. Alternatively, they argue in a footnote, the Court should grant summary judgment on this claim because Plaintiffs have not established that state law remedies are inadequate to address their injury. *Id.* at 9–10, n.2. They additionally ask the Court to recognize that Streicher is entitled to qualified immunity because reasonable officers could disagree as to whether his conduct violated Stinson's constitutional rights. *Id.* at 10. Finally, Defendants move for this Court to relinquish jurisdiction over

---

[6]The parties agree that this fact is accurate but Defendants object that it is immaterial and inadmissible. ECF No. 33 at 8, n.4.

[7]All three Defendants move collectively for summary judgment. However, the Court's order on the motions for partial judgment on the pleadings dismissed with prejudice the constitutional claims against WCMIC. ECF No. 26 at 9. As Defendants note, any constitutional claim that proceeds after summary judgment proceeds only against Streicher and, derivatively, against Milwaukee County. ECF No. 30 at 2, 9.

Plaintiffs' three remaining state law claims and their punitive damages claim if their motion for summary judgment is granted as to the constitutional claim. *Id.* at 12–13. Plaintiffs, in response, argue that the undisputed facts could support a finding of criminal recklessness, and that Streicher is not entitled to qualified immunity. ECF No. 34 at 1–2.

The Court will deny Defendants' motion. The undisputed facts in this case—after development through discovery—still could support competing inferences as to whether Streicher's conduct was criminally reckless; resolution of the question of intent also requires assessment of Streicher's credibility. Consistent with the Court's prior order, the question of whether, in fact, Streicher acted with intent to cause harm is a question best resolved by a jury. *See* ECF No. 26 at 5. Because factual disputes and credibility determinations preclude summary judgment at this time, the Court will defer on the question of qualified immunity. Pursuant to the parties' notice of settlement of Plaintiffs' claims under state law, ECF No. 40, the Court denies as moot summary judgment as to the issue of relinquishing jurisdiction over those claims.

### 4.1    Substantive Due Process Claim

To prevail on a substantive due process claim arising out of injuries caused by a public official's use of an official vehicle, Plaintiffs must show that Streicher acted "with criminal recklessness—which is the same as deliberate indifference." *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021) (citations and quotations omitted). Deliberate indifference requires the offending officer to have "actual knowledge of impending harm which he consciously refused to prevent" or have "subjectively kn[own] about the risk he created and consciously disregarded it," evincing a "willing[ness] to let a fatal collision occur." *Id.* at 729–30 (citing *Hill v.*

*Shobe*, 93 F.3d 418, 421 (7th Cir. 1996)). "Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions." *Id.* "The key question is whether the officer had sufficient knowledge of the danger such that one can infer he intended to inflict the resultant injury." *Id.* (citations and quotations omitted).

Summary judgment is inappropriate as to this claim because resolving whether Streicher acted with the requisite intent not only requires considering the undisputed facts of the case but also requires weighing competing inferences from those facts and assessing Streicher's credibility, which are functions best left to a jury. *See Abdullahi*, 423 F.3d at 769; *see also Bowyer v. U.S. Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986) ("Even though there may be no dispute over the basic facts, summary judgment is inappropriate if the parties disagree about the inferences to be drawn from those undisputed facts."). The Court previously found that, in a posture challenging the sufficiency of the complaint, Plaintiffs had adequately pled a substantive due process claim. ECF No. 26 at 5. The Court previously found that dismissal was inappropriate because "one does not need to know, for a fact, that a light is red to know, for a fact, that driving without looking will cause an accident. . . . The question is whether Streicher looked down . . . for such a long period of time *knowing* that it would result in harm to others." *Id.* This conclusion still holds on summary judgment.

After examining the facts and drawing reasonable inferences from them, a jury could conclude that Streicher looked away from the road for such a significant period while the traffic light was yellow or red that he would have known his conduct was likely to result in harm, and yet consciously decided not to abate his risky behavior. Streicher has

acknowledged he looked away from the road, and/or at his Tahoe's computer screen, for some time before the collision, though he has testified he does not recall for exactly how long. It is also undisputed that Streicher's phone display activated, and his phone was unlocked at the time of the collision. Even though it is undisputed that Streicher's phone showed no signs of active user interaction during this time, *see supra* note 5, the lack of user interaction does not necessarily establish that he was completely ignoring his phone. The fact that his phone unlocked, likely through facial recognition, shortly before the crash is consistent with a finding that he was looking at it intentionally, at least long enough to unlock it—and, in the process, intentionally ignoring the road ahead in the process. *See Omnicare, Inc. v. UnitedHealth Grp.*, 629 F.3d 697, 704 (7th Cir. 2011) (noting that, at summary judgment, district courts "are not required to draw every requested inference . . . [and] must only draw reasonable ones that are supported by the record").

Whether Streicher was looking at his computer for a work-related purpose or at his phone in order to engage in a lewd conversation (and the exact content and timeline of that conversation) is immaterial. *See supra* note 2.[8] What matters is that he was looking away from the road. The facts that his phone was unlocked and potentially had his attention, and that he has admitted to not looking at the road for the at least part of the time in which he approached the intersection, are enough to support a finding that he looked away from intersection he was approaching long enough—up to 15

---

[8]Likewise, Plaintiffs' argument that Streicher was somehow not acting in service of a law enforcement objective by allegedly sending lewd messages while on the clock is irrelevant in light of the parties' stipulation that Streicher was acting within the scope of his employment. *See* ECF Nos. 33 at 2, 34 at 3–4, and 37 at 8.

to 15.5 seconds—to appreciate that his doing so was likely to result in harm to others. *See Flores*, 997 F.3d at 729 ("Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions."); *Est. of Jones v. City of Chi.*, No. 04 C 3742, 2008 WL 4153679, at *4–5 (N.D. Ill. Sept. 2, 2008) (granting summary judgment to officers who had, at most, approximately five seconds from the time they saw victims until impact). Whether Streicher's law enforcement experience, general awareness of the risks of using his computer or electronic devices while driving his Tahoe, and 2018 on-duty collision enhance the likelihood that he knew, on the day of the subject incident, that his conduct posted extreme risk, is similarly for the jury to decide.[9]

Equally important, a jury should hear Streicher's testimony and decide whether his account of the 15 to 15.5 seconds before the collision is credible. A jury, also considering the above-referenced evidence with respect to phone and computer use, could choose to credit Streicher's testimony as to what he remembers, *see supra* note 4 and accompanying text, and conclude that, although he does not remember what he was doing

---

[9]Plaintiffs argue briefly that Streicher's guilty plea to one count of homicide by negligent operation of a vehicle, in violation of Wis. Stat. § 940.10(1), also proves his knowledge on the day of the incident. The mental element for this statute is "criminal negligence as defined in s. 939.25." Wis. Stat. § 940.10(1), Judicial Council Note, 1988. The referenced section in turn defines criminal negligence as "ordinary negligence to a high degree, consisting of conduct that the actor *should* realize creates a substantial and unreasonable risk of death or great bodily harm to another[.]" Wis. Stat. § 939.25 (emphasis added). By their terms, the Wisconsin statutes defining the offense to which Streicher pled guilty do not prove his subjective intent as required for a substantive due process claim, because the offense requires only objective knowledge. The subsequent guilty plea is therefore immaterial on summary judgment.

during every second of that period, he was not actively distracted and ignoring risks ahead of him during that time. Conversely, a jury considering this evidence could determine that Streicher's testimony in this regard is ultimately self-serving and that the facts otherwise point to his lack of attention to the road for such a long period that he must have known about the extreme risks his inattention posed.[10]

Defendants argue that the facts "allow for no more than the inference that [Streicher] was inattentive." ECF No. 30 at 1. In support of this point, they contend that the facts of this case are more analogous to *Hill*, 93 F.3d 418—where the Seventh Circuit found deliberate indifference was not sufficiently alleged—and distinguishable from *Flores*, 997 F.3d 725—where deliberate indifference was sufficiently alleged. *Id.* at 4–8. Their distinctions are not persuasive, however.

In *Hill*, the Seventh Circuit reversed the district court's denial of a motion to dismiss a substantive due process claim where a defendant officer "was driving well over the speed limit, even though he was not responding to an emergency" and "failed to have his cruiser's headlights, emergency lights, or siren operating," *Hill*, 93 F.3d at 420. He ran a red light and crashed into plaintiff's car, resulting in severe injuries to and eventually the death of the plaintiff. *Id.* The Seventh Circuit found that the defendant officer's actions did not support an inference of intent to inflict the resulting

---

[10]Defendants argue, and the Court agrees, that Streicher's prior misdemeanor conviction, prior job discipline, and loss of employment as a result of the collision are immaterial. *See supra* notes 1 and 6. These instances are not admissible to show Streicher's character or propensity to commit the alleged injury. *See* Fed. R. Evid. 404. They do not appear at face value to be admissible under any of Fed. R. Evid. 404(b)(2)'s exceptions and have no probative value to prove Streicher was aware of the risks of his conduct that day.

harm, and that he had merely "acted in the fact of a recognizable but generic risk to the public at large." *Id.* at 421–22.

In contrast, the defendant officer in *Flores*, also not responding to an emergency, drove at speeds between 78 and 98 miles per hour, with his emergency lights and siren operating intermittently. *Flores*, 997 F.3d at 728. The officer drove through a red light at an intersection with an obstructed view of cross traffic, which resulted in the death of the plaintiff. *Id.* The Seventh Circuit, drawing on *Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018) and *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015), found that a jury could find that the defendant officer's actions demonstrated the requisite level of intent for a substantive due process claim, and reversed the district court's dismissal of that claim. *Id.* at 729–30.

Defendants do not convincingly argue that Streicher's conduct somehow imposes a lesser degree of risk than that posed by the officers' conduct in *Flores*, *Sauers*, and *Browder*, which was so extreme as to support an inference of intent to harm. But driving towards an intersection without looking at the road for up to 15.5 seconds—even at or around the posted speed limit of thirty miles per hour—poses a similar risk of causing a collision and grave injuries as speeding through an intersection against a red light while looking at the road ahead. *See also* ECF No. 26 at 5.

Defendants point to the fact that the defendant officers in *Flores*, *Sauers*, and *Browder* were all traveling well over the speed limit in response to non-emergency situations. This common choice to "assume extreme, known risks" by driving above the speed limit, Defendants argue, weighs heavily in the analysis of whether an officer's behavior evinces subjective awareness of risk and therefore deliberate indifference. *See* ECF No. 30 at 7–8. But Defendants do not satisfactorily explain how *Hill*—where the

defendant officer was also speeding but no deliberate indifference was found—is more analogous to the facts here than *Flores* and therefore controlling.

The undisputed fact that Streicher drove at or below the speed limit is, on its own, not enough to defeat an inference that he still appreciated the risk of driving into an intersection in the right turn only lane against a red light—the Seventh Circuit's divergent conclusions in *Hill* and *Flores* demonstrate that speed is not the sole factor in analyzing whether an officer's behavior supports an inference that he was subjectively aware of, and consciously disregarded, a risk of harm. *See also Posey v. Miro*, No. 11 CV 5660, 2014 WL 3843940, at *4 (N.D. Ill. Aug. 5, 2014) (finding a jury could conclude the defendant officer, who traveled the wrong way down a one-way street, saw the victim before impact and had time to stop to avoid impact).

Defendants also attempt to distinguish the case at bar from *Flores*, *Sauers*, and *Browder* by characterizing the case law as definitively ascribing intent to defendant officers even though the courts in those cases decided only that the question of intent should proceed beyond a motion to dismiss. For example, Defendants highlight that the defendant officers in *Flores* and *Browder* ran red lights and argue that, unlike Streicher, both "realized the light was red," demonstrating that they knew their actions created an imminent risk of injury. ECF No. 30 at 8. The *Flores* court made no such finding; rather, the question of whether the defendant officer there knew of the risk he posed by driving into an intersection against a red light at a high speed (i.e., whether, despite his obstructed view of the intersection, he at all appreciated the fact that the light was red and that driving into the intersection against the signal posed a risk of harm) was deemed

sufficiently contestable to survive a motion to dismiss and be submitted to further factfinding. *See Flores*, 997 F.3d at 729–30. The *Browder* court similarly found that "taking the facts alleged as true, [the defendant officer] violated the constitutional rights" of the plaintiffs, affirmed the district court's denial of the defendant officer's motion to dismiss, and remanded the case. *Browder*, 787 F.3d at 1082–83.

Without deciding whether the officers in fact knew that they were proceeding against a red light into an intersection, the *Flores* and *Browder* courts found that the officers' actions could permit a jury to find the officers intended to cause harm. This case presents a similar question—whether Streicher's conduct supports an inference that he acted with actual knowledge of an impending harm that he consciously chose to ignore—that is not capable of definitive resolution on summary judgment.

In effect, Defendants appear to argue that, in order to sustain a substantive due process claim in this context, Plaintiffs must establish that Streicher had complete subjective knowledge of the specific impending harm, that is, that he was about to drive into the intersection in a right turn only lane against the red light and into Stinson's car. *See* ECF No. 30 at 8. But the case law does not quite require this: even where an officer has an obstructed view of oncoming traffic, "the law does not require perfect knowledge on [the officer's] part"—an officer who cannot completely see where his car is headed can still be found to have knowledge that his conduct "created an imminent risk of fatal injury." *Flores*, 997 F.3d at 730. This logic applies where the officer's obstructed or incomplete view of the road ahead is the result of his own choices to look at his computer or phone and away from the road. It is, again, for the jury to decide whether Streicher

in fact looked away from the road long enough that he must have subjectively known of the risks his conduct imposed.

Ultimately, "[a]n officer . . . can act so recklessly that a trier of fact would be entitled to find subjective knowledge of an unjustifiable risk to human life and conscious disregard of that risk." *Id.* at 729–30. This may or may not be such a case where subjective knowledge can be found based on the level of care or recklessness evinced by Streicher's conduct. But it is the jury, and not the Court on summary judgment, that must weigh the evidence, draw reasonable inferences, and assess witness credibility to answer that question. The Court therefore denies Defendants' motion on this basis.

### 4.2     Adequacy of State Law Remedies

Defendants argue, in a footnote, that "on the face of the complaint, plaintiffs assert the existence of state law remedies," which "precludes the Estate's claim for a deprivation of substantive due process[.]" ECF No. 30 at 9–10, n.1 (citing *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010)). Plaintiffs do not respond at all to this argument. Defendants have spent precious little time exploring the case law, developing this legal argument, and explaining how it applies to the facts of this case (despite having room to do so, as their brief clocks in well under the applicable page limit). As a result, the Court declines to consider the argument and will not grant summary judgment on this basis. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *Est. of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

### 4.3     Qualified Immunity

"Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott*, 705 F.3d at 713 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome a defendant's claim of qualified immunity, "the plaintiff[] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Id.* (citations omitted). "Law enforcement officers, the [Supreme] Court has stressed, 'can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Strand v. Minchuk*, 910 F.3d 909, 915 (7th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Considering the competing inferences and credibility determinations outlined above, a jury could conclude that Streicher's conduct evinced the requisite level of intent for a substantive due process claim. Summary judgment on the question of qualified immunity is generally inappropriate where "determining whether [defendant's] violation of [plaintiff's] rights was clearly established [as unlawful] . . . requires findings of fact." *Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021). Whether the law clearly established that Streicher's acts were violations of Stinson's constitutional rights—that is, how reasonable officers would, after twenty years' time, understand the 1996 precedent of *Hill v. Shobe* as applied to the facts of this case—is to be determined after the facts are clarified. If a jury draws inferences in Stinson's favor and finds that he has established a constitutional violation, Streicher may yet argue that the case law in this circuit did not clearly establish on January 25, 2020, that

it was a violation of Stinson's constitutional rights for Streicher to operate his Tahoe while not paying attention to the road and proceeding against a red light into an intersection without the right of way. *See Taylor*, 10 F.4th at 812 (citing *Estate of Escobedo v. Martin*, 702 F.3d 388, 398 n.4 (7th Cir. 2012) ("Though rare, trial courts may consider qualified immunity after trial.").

### 4.4    State Law Claims

The parties informed the Court on October 11, 2022 that they had settled all of Plaintiffs' claims under Wisconsin law and would file a stipulation seeking dismissal of those claims. ECF No. 40. In light of both the parties' settlement and the denial of summary judgment, the issue of relinquishing jurisdiction over Plaintiffs' state law claims is moot.

### 4.5    Punitive Damages

Defendants again in a footnote request summary judgment in their favor on Plaintiffs' claim for punitive damages. ECF No. 30 at 13, n.2. Because the question of punitive damages is bound up in a determination of Streicher's mental state, *see Smith v. Wade*, 461 U.S. 30, 39–51 (1983), the Court leaves resolution of this issue for another day.

### 5.    CONCLUSION

Because the facts of this case present competing inferences and significant issues of credibility only capable of resolution by a jury, the Court denies Defendants' motion for partial summary judgment. The Court defers on the corollary legal question of qualified immunity until the underlying factual issues are decided.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment, ECF No. 29, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2022.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge