_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

ESTATE OF CEASAR STINSON
and CHIPO K. SAMVURA,
          *Plaintiffs-Appellees,*

                    *v.*

JOEL STREICHER,
          *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin,
Case No. 2:21-cv-01046,
the Honorable J.P. Stadtmueller, United States
District Judge, Presiding

_____

## REPLY BRIEF OF DEFENDANT-
## APPELLANT JOEL STREICHER

_____

HANSEN REYNOLDS LLC
Andrew A. Jones
James F. Cirincione
John W. McCauley
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: (414) 455-7676
ajones@hansenreynolds.com

GRADY, HAYES & NEARY LLC
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive
Waukesha, Wisconsin 53188
Phone: (262) 347-2001
tjd@ghnlawyers.com

*Attorneys for Defendant-*
*Appellant Joel Streicher*

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

INTRODUCTION .................................................................................................... 1

ARGUMENT............................................................................................................. 1

    A.This Court's Appellate Jurisdiction Is Secure. ............................................ 1

       1.   This Court Has Jurisdiction to Decide Whether Streicher's Actions Violated Clearly Established Constitutional Law. ........................................................2

       2.   Stinson Cites the Wrong Legal Standard. ....................................................3

       3.   This Appeal Does Not Require the Court to Resolve Any Factual Disputes. ... 5

    B.Streicher Did Not Violate Stinson's Substantive Due Process Rights....................11

       1.   There Is No Evidence that Streicher Knew an Accident Was Imminent........ 12

       2.   The Facts Do Not Support any Inference that Streicher Intended to Cause the Collision. ...................................................................................................... 14

       3.   Negligence, even Criminal Negligence, Does Not Violate the Due Process Clause........................................................................................................... 15

    C.Streicher's Claimed Constitutional Right Was Not "Clearly Established" at the Time of the Collision in January 2020. ............................................................ 18

       1.   Stinson Seeks to Define the Asserted Right at an Improperly High Level of Generality. ................................................................................................... 19

       2.   Stinson Does Not Identify any Closely Analogous Seventh Circuit Cases or any Robust Consensus of Persuasive Authorities that Support his Position. 20

       3.   Streicher's Conduct Was Not Obviously Unconstitutional............................22

CONCLUSION....................................................................................................... 23

CERTIFICATE OF COMPLIANCE...................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Behrens v. Pelletier,*
   516 U.S. 299 (1996) ............................................................................ 3, 6, 7

*Billioni v. Bryant,*
   759 F. App'x 144 (4th Cir. 2019) ................................................................ 21

*Browder v. Albuquerque,*
   787 F.3d 1076 (10th Cir. 2015) ....................................................... 14, 15, 21

*Browder v. Casaus,*
   675 F. App'x 845 (10th Cir. 2017) ............................................................. 15

*Bublitz v. Cottey,*
   327 F.3d 485 (7th Cir. 2003) ............................................................... 11, 12

*Checki v. Webb,*
   785 F.2d 534 (5th Cir. 1986) ..................................................................... 22

*Cherry v. University of Wisconsin System Board of Regents,*
   265 F.3d 541 (7th Cir. 2001) ................................................................... 3, 4

*Cibulka v. Madison,*
   992 F.3d 633 (7th Cir. 2021) ................................................................. 2, 23

*Coady v. Steil,*
   187 F.3d 727 (7th Cir. 1999) ....................................................................... 6

*Coulter v. Gilmore,*
   155 F.3d 912 (7th Cir. 1998) ....................................................................... 2

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998) .................................................................................. 16

*Dean v. McKinney,*
   976 F.3d 407 (4th Cir. 2020) ..................................................................... 22

*DiPerna v. Chicago Sch. of Prof'l Psychology,*
   893 F.3d 1001, (7th Cir. 2018) ................................................................... 12

*Doe v. Village of Deerfield,*
   819 F.3d 372 (7th Cir. 2016) ....................................................................... 3

*Escobedo v. Bender,*
   600 F.3d 770 (7th Cir. 2010) ............................................................... 18, 19

*Ferguson v. McDonough,*
   13 F.4th 574 (7th Cir. 2021) ................................................................. 9, 10

*Flores v. South Bend,*
   997 F.3d 725 (7th Cir. 2021) ............................................................. passim

*Flowers v. Renfro,*
   46 F.4th 631 (7th Cir. 2022) ................................................................. 5, 10

*Green v. Post,*
   574 F.3d 1294 (10th Cir. 2009) ................................................................. 21

*Hanson v. LeVan,*
   967 F.3d 584 (7th Cir. 2020) ............................................................ 3, 7, 8, 9

*Hill v. Shobe,*
   93 F.3d 418 (7th Cir. 1996) ............................................................... passim

*Johnson v. Jones,*
   515 U.S. 304 (1995) ............................................................................ 6, 9, 10

*Jones v. Wilhelm,*
425 F.3d 455 (7th Cir. 2005) ................................................. 4
*Leaf v. Shelnutt,*
400 F.3d 1070 (7th Cir. 2005) ............................................ 2, 8
*Leiser v. Kloth,*
933 F.3d 696, (7th Cir. 2019) ............................................... 23
*McDowell v. Lansing,*
763 F.3d 762 (7th Cir. 2014) ................................................ 16
*McGee v. Parsano,*
55 F.4th 563 (7th Cir. 2022) ..........................................passim
*McGuire v. United Parcel Serv.,*
152 F.3d 673 (7th Cir. 1998) ................................................. 2
*McKinney v. Duplain,*
463 F.3d 679 (7th Cir. 2006) ....................................... 7, 9, 10
*Mitchell v. Forsyth,*
472 U.S. 511 (1985) ....................................................... 4, 5
*Pearson v. Callahan,*
555 U.S. 223 (2009) ....................................................... 2, 5
*Plumhoff v. Rickard,*
572 U.S. 765 (2014) ....................................................18, 19
*Reed v. Brex, Inc.,*
8 F.4th 569 (7th Cir. 2021) ................................................. 14
*Sain v. Wood,*
512 F.3d 886 (7th Cir. 2008) .........................................passim
*Saucier v. Katz,*
533 U.S. 194 (2001) .......................................................1, 3
*Sauers v. Borough of Nesquehoning,*
905 F.3d 711 (3d Cir. 2018) ...................................... 14, 15, 21
*Springer v. Durflinger,*
518 F.3d 479 (7th Cir. 2008) ................................................. 7
*Steen v. Myers,*
486 F.3d 1017 (7th Cir. 2007)............................................... 12
*Taylor v. City of Milford,*
10 F.4th 800 (7th Cir. 2021) ................................................. 5
*Waldon v. Wal-Mart Stores, Inc.,*
943 F.3d 818 (7th Cir. 2019) ................................................. 7
*Whitlock v. Brueggemann,*
682 F.3d 567 (7th Cir. 2012) ......................................... 9, 10

**Statutes**

Wis. Stat. § 939.25 .............................................................17
Wis. Stat. § 940.10 .............................................................17

**Rules**

28 U.S.C. § 1291 ................................................................ 4

**INTRODUCTION**

A public official is entitled to qualified immunity unless (1) he violated the plaintiff's constitutional rights and (2) the right in question was clearly established at the time. *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001). To overcome former Deputy Sheriff Joel Streicher's claim of qualified immunity here, plaintiffs-appellees ("Stinson" for short) must establish both prongs of this test. But the summary-judgment record makes clear, and Stinson's appellee brief only confirms, that he can satisfy neither prong.

**ARGUMENT**

**A.   This Court's Appellate Jurisdiction Is Secure.**

This Court has repeatedly held that it has jurisdiction to immediately review a denial of summary judgment based on qualified immunity where, as here, the district court "applie[d] the familiar qualified-immunity inquiry to undisputed historical evidence." *McGee v. Parsano,* 55 F.4th 563, 571 (7th Cir. 2022). Viewing the facts in the light most favorable to the plaintiff, this Court may decide the "two purely legal issues" of whether the plaintiff suffered a violation of his constitutional rights and, if so, whether the asserted right was clearly established at the time. *Id.* at 572.

That is all Streicher asks the Court to do here. Although Stinson argues that factual disputes preclude jurisdiction, one searches his brief and the district court's order in vain for the identification of any actual disputed "questions of historical fact—'questions of who did what, when or where, how or why.'" *Id.* at 571 (citation omitted). In truth, the material facts were undisputed below and were accurately summarized by the district court. *See* R. 41 at 3-10; SA 27-34.

The real issue in this appeal is legal rather than factual: do the undisputed facts support a reasonable inference that Streicher violated Stinson's clearly established constitutional rights? The district court thought so, and this Court has jurisdiction to decide whether that determination was correct.

### 1. This Court Has Jurisdiction to Decide Whether Streicher's Actions Violated Clearly Established Constitutional Law.

The issues on appeal fall into the familiar two-part framework of qualified-immunity cases. The first question is whether the factual record on summary judgment made out any constitutional violation. *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009). This Court reviews summary-judgment rulings *de novo,* "drawing [its] own conclusions of law and fact from the record." *McGuire v. United Parcel Serv.,* 152 F.3d 673, 676 (7th Cir. 1998). On appeal, "[m]ost mixed questions of law and fact that require the application of constitutional principles to historical fact receive *de novo* review." *Coulter v. Gilmore,* 155 F.3d 912, 917 (7th Cir. 1998). In other words, how a constitutional standard applies to a given set of facts is a legal issue or a "mixed" question entitled to non-deferential review.

In a qualified-immunity appeal, this Court has held that "whether a particular action violates the Constitution" is an immediately appealable "question of law." *Leaf v. Shelnutt,* 400 F.3d 1070, 1078 (7th Cir. 2005). *See also McGee,* 55 F.4th at 572 (classifying this question as a "purely legal issue"); *Cibulka v. Madison,* 992 F.3d 633, 638 n.2 (7th Cir. 2021) (treating qualified-immunity inquiry as "a pure question of law to be decided by the court"). Elsewhere, this Court has characterized the question of whether an official's conduct "amounted to deliberate indifference" as a "mixed question of fact and law," *Sain v. Wood,* 512 F.3d 886, 891 (7th

Cir. 2008), involving "the application of a legal standard" to the "given facts," *Hanson v. LeVan,* 967 F.3d 584, 591 (7th Cir. 2020). In each case, the result is the same: whether the facts make out a constitutional violation is an issue "properly resolved by this court" and within its jurisdiction. *Sain,* 512 F.3d at 891.

The second question on appeal is whether the constitutional right asserted by Stinson was "clearly established" at the time of the collision with Streicher in January 2020, such that any reasonable officer in Streicher's position would have known that his conduct was unconstitutional. *See Saucier,* 533 U.S. at 201–02. That, too, is a "purely legal issue" within the Court's immediate appellate jurisdiction. *McGee,* 55 F.4th at 572; *see also Behrens v. Pelletier,* 516 U.S. 299, 313 (1996) (stating that "whether the federal right allegedly infringed was 'clearly established'" is an appealable "abstract issue of law").

### 2.   Stinson Cites the Wrong Legal Standard.

Rather than address the cases cited above, Stinson contends that the general collateral order doctrine should govern the scope of appellate jurisdiction here. Appellee Br. 13. According to Stinson, an interlocutory order is appealable only if it was "conclusive on the issue presented," it resolved an "important question separate from the merits," and it would be "effectively unreviewable on an appeal from the final judgment." *Id.* (quoting *Doe v. Village of Deerfield,* 819 F.3d 372, 375 (7th Cir. 2016)). He then argues that the district court's denial of summary judgment here does not meet these criteria. *Id.* at 14–22.

But the cases on which Stinson relies were not qualified-immunity appeals. *Village of Deerfield* considered "whether an order denying leave to proceed anonymously is immediately appealable." 819 F.3d at 374. And in *Cherry v. University*

*of Wisconsin System Board of Regents,* the defendant appealed the denial of a motion to dismiss on Eleventh Amendment grounds. 265 F.3d 541, 545 (7th Cir. 2001). These cases are inapplicable here because the Supreme Court and the Seventh Circuit have developed a more specific rule concerning the immediate appeal of an order denying qualified immunity.

The Supreme Court has emphasized that qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (italics in original). Consequently, if discovery does not reveal a genuine issue of material fact regarding the availability of qualified immunity, the officer is entitled to summary judgment. *Id.* Otherwise, if the case were erroneously permitted to go to trial, the right to immunity would be "effectively lost." *Id.* Put differently, a motion for summary judgment is the defendant's "final opportunity to secure the full benefit of qualified immunity." *Jones v. Wilhelm,* 425 F.3d 455, 466 (7th Cir. 2005).

Accordingly, although the denial of a motion for summary judgment is generally not immediately appealable under 28 U.S.C. § 1291, the Supreme Court carved out an exception to this rule when an officer requests summary judgment based on qualified immunity. If the immunity claim "turns on an issue of law," the district court's denial of summary judgment is an immediately appealable "final decision." *Mitchell,* 472 U.S. at 530.

Despite *Mitchell,* Stinson argues here that because the district court chose to "defer" a ruling on qualified immunity until after trial, the issue was not "conclusively determined" and therefore is not appealable. Appellee Br. 14. Similarly, Stinson asserts that if Streicher loses at trial, he can appeal at that time and argue

qualified immunity; thus, the district court's order denying summary judgment is not "effectively unreviewable on an appeal from the final judgment." *Id.* at 21 n.12.

Stinson's arguments, if accepted, would upend *Mitchell*. If an officer is entitled to qualified immunity as a matter of law but is forced to endure a trial anyway, the immunity is "effectively lost." *Mitchell*, 472 U.S. at 526. A district court cannot undermine the officer's qualified immunity by simply refusing to rule on its applicability before trial. For that reason, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (citation omitted); *see also Taylor v. City of Milford*, 10 F.4th 800, 812 (7th Cir. 2021) ("[T]he Supreme Court has urged lower courts to determine the applicability of qualified immunity as soon as practicable."). Stinson's arguments ignore that important directive. District courts may put off a ruling on qualified immunity only when it is "impossible" to decide the issue before trial. *Taylor*, 10 F.4th at 812. Such instances are "rare." *Id.* This is not that rare case.

### 3. This Appeal Does Not Require the Court to Resolve Any Factual Disputes.

Stinson's main argument against jurisdiction is that the district court found there were "factual disputes and credibility determinations" precluding summary judgment. Appellee Br. 15 (citing SA 35). According to Stinson, *Flowers v. Renfro*, 46 F.4th 631 (7th Cir. 2022), prohibits immediate appeals in such circumstances. *Id.*; ECF No. 34 (appellees' amended jurisdictional statement). This argument misreads *Flowers* and misunderstands the basis for the district court's decision.

As discussed above, the appealability of a decision denying summary judgment based on qualified immunity is an exception to the usual final-judgment rule. There is, however, an "exception to the exception." *Coady v. Steil,* 187 F.3d 727, 730 (7th Cir. 1999). To the extent the district court ruled that the pretrial record created a genuine issue of fact for trial, a defendant may not immediately appeal that factual determination. *Johnson v. Jones,* 515 U.S. 304, 307 (1995). The factual dispute in *Johnson* concerned whether three of the defendants took part in beating the plaintiff. *Id.* at 313. That kind of determination, the Supreme Court held, was not an immediately appealable "final decision." *Id.*

But the Court subsequently made clear that *Johnson* applies only where the issue on appeal is "nothing more than whether the evidence could support a finding that particular conduct occurred." *Behrens,* 516 U.S. at 313. *Johnson* "surely does not mean" that every time a district court denies summary judgment on that ground that "material issues of fact remain," the denial is non-appealable. *Id.* at 312. "That is a misreading of the case." *Id.*

This Court has likewise stressed the "exceedingly limited scope of *Johnson's* holding." *McGee,* 55 F.4th at 571. In drawing the line between an immediately appealable legal dispute and a non-appealable factual one, the key question is whether the dispute concerns "historical fact." *McGee,* 55 F.4th at 571. *Johnson* held only that questions of historical fact are not immediately appealable. *Id.* But where the district judge instead "applies the familiar qualified-immunity inquiry to undisputed historical evidence," this Court is authorized—and in fact "obligated"—to exercise interlocutory appellate jurisdiction. *Id.* "It is well settled that *Johnson* did not prohibit appellate review of a district court's application of law to

facts." *Sain,* 512 F.3d at 890; *see also Hanson,* 967 F.3d at 591 (treating the application of the qualified-immunity standard to given facts as an appealable question of law).

Stinson's argument rests almost entirely on the district court's comment that there were "factual disputes and credibility determinations" that should be resolved by a jury. R. 41 at 11; SA 35; *see also* ECF No. 34 at 2. But that comment alone does not decide the question. *See Behrens,* 516 U.S. at 312–13 (rejecting a similar argument). A lower court's characterization of an issue as factual does not prevent appellate review where, as here, the "real question" is a legal one involving the application of the qualified-immunity standard to a given set of facts. *McKinney v. Duplain,* 463 F.3d 679, 688 (7th Cir. 2006). And generalized criticism of the other side's credibility is "not enough to avoid summary judgment." *Waldon v. Wal-Mart Stores, Inc.,* 943 F.3d 818, 823 (7th Cir. 2019). Whether a party's position is credible in that sense is often at issue when deciding whether the party is ultimately liable, but that does not transform that determination into a factual dispute. *See Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.").

Moreover, the district court's explanation of its reasoning illustrates that its denial of summary judgment was based on its conclusion that a jury might reach competing inferences as to whether Streicher's undisputed conduct amounted to criminal recklessness. R. 41 at 11, 18; SA 35, 42. Unlike a dispute about the historical facts, whether a given set of facts could support a finding of criminal

recklessness is a legal question or a mixed question of law and fact squarely within this Court's jurisdiction. *McGee,* 55 F.4th at 572; *Hanson,* 967 F.3d at 591; *Sain,* 512 F.3d at 891; *Leaf,* 400 F.3d at 1078.

The district court did not identify any genuine disputes about the relevant historical facts; nor does Stinson identify any in his brief. In truth, the relevant facts for summary judgment were laid out in an agreed statement of facts jointly submitted by the parties. *See* R. 33, SA 10–18. The district court based its recitation of the material facts almost entirely on the parties' joint statement. *See* R. 41 at 3; SA 27. Stinson does the very same thing in his brief. *See* Appellee Br. 4–8.

In a footnote, though, Stinson claims in passing that the district court "set forth an extensive recitation of the factual disputes" in footnotes 2, 4, and 5 of its summary-judgment order. *Id.* at 19 (citing R. 41 at 5–6, 8–9; SA 29–30, 32–33). Stinson's claim falls short based on review of the order itself. Footnote 2 addressed the timeline of Streicher's exchange of messages on the "Zoosk" app. The district court correctly held that the record was clear about the timing and order of each message; in particular, there was no evidence that Streicher was messaging on the app at the time of the collision. R. 41 at 5–6; SA 29–30. Thus, there was no genuine factual dispute about the timing of the Zoosk messages. *Id.*

In footnote 4, the district court acknowledged that, according to Stinson, Streicher "cannot or will not account for [the] 15 to 15.5 seconds" before the collision. R. 41 at 8; SA 32. Streicher disputed this characterization of his testimony. *Id.* Similarly, in footnote 5, the district court noted that Stinson contended "Streicher likely looked at [his] phone unlocking it 22 seconds before impact." *Id.* Streicher disputed that proposed fact based on his testimony that he "ha[d] no memory

of unlocking the phone himself." *Id.* Both disputes are really about how to characterize the facts rather than the facts themselves, but in any event, they are immaterial.

For purposes of this appeal, this Court can simply take Stinson's characterization of these facts as true and determine whether those facts support an inference that Streicher violated Stinson's clearly established constitutional rights. *See Hanson,* 967 F.3d at 591 (exercising jurisdiction over the application of the qualified-immunity standard to plaintiff's version of the facts "taken as given"); *Sain,* 512 F.3d at 891 ("For purposes of this appeal, [defendant] can assume [plaintiff's] version of the facts.").

By contrast, in *Johnson* there was an "issue of fact concerning petitioners' involvement in the alleged beating" of the plaintiff, including conflicting deposition testimony. 515 U.S. at 307-08, 313. This precluded an immediate appeal of the district court's denial of summary judgment. *Id.* at 307. In *Whitlock v. Brueggemann,* the question was whether two witnesses' recantations, which provided evidence of manipulation and coercion by the police, were inadmissible hearsay. 682 F.3d 567, 575 (7th Cir. 2012). The Court concluded that this question was too inseparable from the facts to be decided in an immediate appeal. *Id.* In *Ferguson v. McDonough,* there was a factual question about whether, based on a dashcam video, the plaintiff was actively resisting arrest when the defendant officer tased him; the court dismissed for lack of appellate jurisdiction. 13 F.4th 574, 576 (7th Cir. 2021).

In *McKinney v. Duplain,* the defendant officer testified that the plaintiff was charging at him when the officer shot him; the district court found that the forensic

evidence contradicted the officer's testimony; and there was a further question about whether the expert testimony upon which the district court relied was admissible under *Daubert*. 463 F.3d at 689. This Court held that it lacked jurisdiction to review the record and decide these factual issues in an immediate appeal. *Id.* at 690. On the other hand, the Court commented that it would have had jurisdiction to decide the officer's other arguments: that "taking the facts as assumed by the district court, his conduct did not violate the Constitution;" and "the purely legal question of whether shooting a charging suspect four times violates clearly established constitutional principles." *Id.* at 688-89.

This appeal does not involve anything like the factual disputes that precluded jurisdiction in *Johnson, Whitlock, Ferguson,* and *McKinney*. Those disputes concerned the underlying historical facts about what happened. Streicher's arguments, in contrast, are akin to the "purely legal" questions which the *McKinney* Court acknowledged would be within its appellate jurisdiction.

*Flowers v. Renfro,* 46 F.4th 631 (7th Cir. 2022), on which Stinson primarily relies, does not support his position either. In *Flowers*, there were disputes about the underlying historical facts concerning whether the plaintiff was resisting arrest and the nature of the officer's takedown. 46 F.4th at 634. It was those factual disputes, rather than the ultimate legal question of whether the officer's use of force was unconstitutional, that precluded appellate jurisdiction. Again, there is no remotely similar factual issue here. Stinson's claim that "*Flowers* is directly on point and establishes that this Court does not have jurisdiction to consider this appeal" is therefore incorrect. ECF No. 34 at 3 (amended jurisdictional statement).

Stinson protests that the district court "was not required to specifically delineate every dispute of fact." Appellee Br. 19. Perhaps not, but to defeat jurisdiction, Stinson must identify *at least one* such dispute that would preclude appellate review. He has not done that and cannot do that. What Stinson seeks to do instead is to reframe as a "dispute of fact" the question of whether Streicher's actions violated the constitutional deliberate-indifference standard. *See id.* at 20. But that is a classic question of law, as this Court has repeatedly held. Because Streicher challenges the district court's application of "the familiar qualified-immunity inquiry to undisputed historical evidence," *McGee,* 55 F.4th at 571, this appeal falls well within this Court's appellate jurisdiction.

## B. Streicher Did Not Violate Stinson's Substantive Due Process Rights.

Both parties agree that the "deliberate indifference" standard articulated in *Hill v. Shobe,* 93 F.3d 418 (7th Cir. 1996), governs Stinson's substantive due process claim here. *See* Op. Br. 16; Appellee Br. 26. Under that standard, Stinson must show that Streicher (1) "knew an accident was imminent" but (2) "consciously and culpably refused to prevent it." *Hill,* 93 F.3d at 421. The standard is subjective, focused on what Streicher in fact knew at the time of the collision, not what he potentially should have known or what a hypothetical reasonable officer in his shoes might have known. *See id.*

To meet the exacting standard required for a constitutional violation, the officer's deliberately indifferent conduct must also be "conscience-shocking." *Bublitz v. Cottey,* 327 F.3d 485, 490 (7th Cir. 2003) (citation omitted). The paradigmatic case of conscience-shocking behavior is where the officer acts with a purpose and

intent to inflict harm. *Id.* at 491; *Steen v. Myers,* 486 F.3d 1017, 1024 (7th Cir. 2007). But sometimes, deliberate indifference can serve as a "proxy for intent" where the officer had "sufficient knowledge of the danger that one can infer he intended to inflict the resultant injury." *Hill,* 93 F.3d at 421.

### 1. There Is No Evidence that Streicher Knew an Accident Was Imminent.

For Stinson's claim of deliberate indifference even to get off the ground, he must show, in the first place, that Streicher had actual knowledge that "an accident was imminent." *Hill,* 93 F.3d at 421. But the summary-judgment record, even taken in the light most favorable to Stinson, does not contain any such evidence.[1]

As detailed in Streicher's opening brief (at pages 4 to 8), Streicher was driving northbound on North 10th Street in the City of Milwaukee before the collision with Stinson. R. 33 at 6; SA 15. Streicher looked at his computer screen to check for new assignments, and his personal cellular phone unlocked 22 seconds before the impact, likely through facial recognition. *Id.* at 6-7; SA 15-16. But the phone showed no evidence of any further user interaction until after the accident. *Id.* As he approached the intersection, Streicher does not recall seeing that the traffic light was red, did not see Stinson or Stinson's car, and did not see another car that passed through the intersection seconds before Stinson. *Id.* at 7-8; SA 16-17.

---

[1] Stinson contends that he need only "allege" a constitutional violation. Appellee Br. 24-25. Allegations may be enough to survive a motion to dismiss, but they are not adequate to survive a motion for summary judgment. *DiPerna v. Chicago Sch. of Prof'l Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) ("Federal Rule of Civil Procedure 56 'mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citation omitted).

These facts show that Streicher was negligent, inattentive, and engaged in "distracted driving," as Stinson acknowledges in his brief. *See, e.g.,* Appellee Br. 24. But the facts do not reasonably show that Streicher knew a collision was imminent. Under *Hill*, it is categorically insufficient to prove that the defendant official acted in the face of a "recognizable but generic risk to the public." 93 F.3d at 421. And that is the most that the facts could reasonably be interpreted to establish here.

In arguing otherwise, Stinson takes liberties with the factual record as stipulated by the parties and adopted by the district court below. He claims, for example, that Streicher "chose to disregard" the red light, Appellee Br. 3-4, and that he "deliberately looked away from the road and intersection lights," *id.* at 33. But according to the agreed statement of facts, Streicher did not even recall seeing the red light before the accident. R. 33 at 7; SA 16.

Stinson also claims that Streicher "chose to disregard" Stinson's vehicle and the vehicle that passed through the intersection 5 seconds earlier. Appellee Br. 3-4. But again, the parties' joint factual statement records that Streicher did not see either vehicle before the collision. R. 33 at 7-8; SA 16-17. Stinson admits as much elsewhere in his brief. Appellee Br. 7. Not having seen the vehicles, Streicher could not possibly have "chosen to disregard" them.

Stinson later asserts that Streicher "consciously chose to look away from the road—probably at his cell phone awaiting a response to the personal conversation on a dating app." Appellee Br. 31. And he even asserts that "the evidence indicates [Streicher] was looking at his cell phone instead of the road, waiting to continue a salacious conversation. *Id.* at 23. Not true. There is no evidence that Streicher

made a deliberate decision to look away from the road at the time of the collision, or that he was looking at his phone at that time. On the contrary, the stipulated evidence was that Streicher did not look at or otherwise interact with his phone immediately prior to or at the time of the collision. R. 33 at 6-7; SA 15.

To survive summary judgment, Stinson "must point to specific facts showing that there is a genuine issue for trial, and inferences relying on mere speculation or conjecture will not suffice." *DiPerna,* 893 F.3d at 1006. Moreover, Stinson cannot cite new "facts" for the first time on appeal that were not part of the summary-judgment record below. *Reed v. Brex, Inc.,* 8 F.4th 569, 581 (7th Cir. 2021). The stipulated factual record below simply does not support Stinson's claims.

### 2. The Facts Do Not Support any Inference that Streicher Intended to Cause the Collision.

Furthermore, for deliberate indifference to rise to the level of a constitutional violation, the officer's conduct must permit an inference that "he intended to inflict the resultant injury." *Hill,* 93 F.3d at 421. Again, there is no evidence in the summary-judgment record here that would permit such an inference.

Compare the cases on which Stinson relies—*Browder v. Albuquerque,* 787 F.3d 1076 (10th Cir. 2015), *Sauers v. Borough of Nesquehoning,* 905 F.3d 711 (3d Cir. 2018), and this Court's opinion in *Flores v. South Bend,* 997 F.3d 725 (7th Cir. 2021). *See* Appellee Br. 29-30. In all three cases, the officer was driving far faster than the speed limit. *See Browder,* 787 F.3d at 1080 (66 mph through city intersections); *Sauers,* 905 F.3d at 715 (over 100 mph); *Flores,* 997 F.3d at 727 (78 to 98 mph, two to three times the speed limit). It is true, as Stinson says, that "speed

is not the dispositive factor." Appellee Br. 36. But it was unquestionably an important factor in all three of the cases on which Stinson chiefly relies.

The officers in those cases also displayed other misconduct that has no parallel here. In *Browder,* for example, the officer sped for almost nine miles through eleven intersections. 787 F.3d at 1080. At the last intersection, he hit the brakes 2.5 seconds before impact and then, half a second later, hit the gas pedal, indicating that he saw the plaintiff's car and chose to accelerate. *See Browder v. Casaus,* 675 F. App'x 845, 847 (10th Cir. 2017). In *Sauers*, the defendant officer initiated a high-speed chase that reached 100 m.p.h. based solely on having observed a minor traffic offense. 905 F.3d at 715. And the officer in *Flores* "careened through residential streets" with a 30-mph speed limit at up to 98 mph. 997 F.3d at 730. He then "charged through" an intersection, despite having an obstructed view, and caused a fatal collision. *Id.*

Streicher, by contrast, was not speeding before or at the time of the accident, did not see Stinson or the red light, and did not accelerate or "charge through" the intersection. This was a tragic case of distracted driving, but not an instance of conscience-shocking deliberate indifference.

### 3. Negligence, even Criminal Negligence, Does Not Violate the Due Process Clause.

Rather than pointing to any evidence that Streicher knew the collision was imminent (because there is none), the district court focused on the "degree of risk" that Streicher's conduct posed. *See* R. 41 at 16-18; SA 40-42. That was an error, and Stinson repeats the mistake in his brief. *See* Appellee Br. 31-32 (quoting the district court's discussion of the "degree of risk") and 33 (claiming a jury could

"reasonably conclude that Streicher assumed a known and probable risk of causing harm"). He even seeks to recast—and water down—*Hill's* deliberate-indifference standard as a constitutional prohibition on "inherently risky behavior." Appellee Br. 38-39.

The Supreme Court has long held that negligence is "categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998). Even gross negligence is insufficient to support a constitutional claim. *McDowell v. Lansing,* 763 F.3d 762, 766 (7th Cir. 2014). This Court in *Hill* stressed that a "lesser degree of knowledge" below actual knowledge and deliberate indifference "does not violate the due process clause." 93 F.3d at 421. For example, it would not be enough to show that a defendant "knew that driving at high speed at night without lights could have potentially fatal consequences" but did it anyway. *Id.* Claims that an officer assumed risks of that kind "are grounded in negligence, not criminal recklessness." *Id.* Under this standard, Stinson's claims about the riskiness of Streicher's conduct necessarily fall short.

Stinson seeks to rely on language in the *Flores* opinion explaining that the officer there plausibly "knew about the risk he created" and "consciously disregarded it." Appellee Br. 30 (citing *Flores,* 997 F.3d at 730). But, to the extent Stinson is suggesting that *Flores* opened the door to negligence and lack of care establishing a constitutional violation, he misreads the Court's opinion. *Flores* did not purport to overrule or modify *Hill*; instead, the Court reaffirmed the *Hill* standard but distinguished *Flores* on the facts. *See* 997 F.3d at 729. And *Flores* reiterated that the "key question" is whether one can infer that the defendant "intended to inflict" an injury, *id.;* not whether he engaged in risky or negligent behavior.

For similar reasons, Stinson's repeated insistence that Streicher is "an admitted felon" and a "criminal" misses the mark. *See, e.g.,* Appellee Br. 23-24. Streicher pled guilty to one count of homicide by negligent operation of a vehicle under Wis. Stat. § 940.10(1). R. 33 at 8; SA 17. The mental state required for that crime is "criminal negligence" under Wis. Stat. § 939.25(1), defined in relevant part as "conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." *Id.* The district court correctly found that Streicher's guilty plea was "immaterial on summary judgment" because it was based on an objective rather than a subjective standard. *See* R. 41 at 14 n.9; SA 38. Additionally, the criminal statute is targeted at risky behavior, *i.e.,* negligence, which, again, is insufficient to prove a due process violation.

Stinson's reference to a previous occasion when Streicher caused a car crash by proceeding straight from a stop into an intersection from a left-turn-only lane also misses the mark.[2] *See* Appellee Br. 24. At most, it helps to establish—in Stinson's own words—that "Streicher knew from his own personal driving experience, that distracted driving could result in a crash[.]" *Id.* Again, this argument goes to negligence, not deliberate indifference. It is akin to a defendant's knowledge that driving at high speeds at night without lights could cause fatal collisions, which the Court in *Hill* expressly rejected as insufficient to show deliberative indifference. 93 F.3d at 421.

---

[2] Stinson also points out that Streicher previously pled guilty to a solicitation charge. Appellee Br. 5, 6 n.3. But that prior plea is wholly immaterial to the question at issue here—whether he acted unconstitutionally with respect to the collision that killed Stinson. *See* R. 41 at 4 n.1; SA 28 (district court's footnote regarding this issue).

Finally, Stinson's arguments about the supposed "purposes" and "rationales" behind qualified immunity also miss the mark. Appellee Br. 22-23. He claims that Streicher should not "be afforded any leeway" since there is no "governmental interest in protecting a criminal" who allegedly "repeatedly violates the rights of innocent civilians." *Id.* But the application of qualified immunity is governed by the well-defined legal standards discussed above, not by Stinson's musings about what would or would not serve the "purposes" of the doctrine.

Indeed, given that negligence is *never* sufficient to provide the basis for constitutional liability, negligence—even criminal negligence—by Streicher cannot be enough to negate the protections of qualified immunity. Likewise, contrary to Stinson's suggestions, and as is discussed below, qualified immunity is very much intended to apply when, as here, the contours of a particular constitutional right— here Substantive Due Process—are not sufficiently defined as to put every reasonable officer on notice that particular conduct would violate the right.

## C. Streicher's Claimed Constitutional Right Was Not "Clearly Established" at the Time of the Collision in January 2020.

Even if Streicher had violated Stinson's due process rights, he would still be protected by qualified immunity because as of January 25, 2020, the date of the collision, it was not clearly established that Streicher's conduct was unconstitutional.

In the qualified-immunity context, a right is "clearly established" only if existing law has defined its contours with specificity and placed the issue "beyond debate." *Plumhoff v. Rickard,* 572 U.S. 765, 778-79 (2014). Normally, the plaintiff needs to identify a "closely analogous case" from this Circuit, *Escobedo v. Bender,*

600 F.3d 770, 780 (7th Cir. 2010), or a "robust consensus" of cases from other circuits establishing the right in question, *Plumhoff,* 572 U.S. at 780. In rare cases, though, the unconstitutionality of an officer's conduct may be obvious. *Escobedo,* 600 F.3d at 780.

Here, Stinson points to no closely analogous case, no robust consensus of authorities, and no other reason to conclude that his asserted due-process rights were clearly established at the time of the collision.

### 1. Stinson Seeks to Define the Asserted Right at an Improperly High Level of Generality.

Stinson argues that it was clearly established in January 2020 that "a police officer who has no legitimate law enforcement reason for engaging in inherently risky behavior with a police vehicle in a non-emergency situation can be constitutionally liable for serious injury that results from a crash." Appellee Br. 38-39. There are at least two fatal problems with this formulation. First, as discussed above, the constitutional standard is not whether an officer engaged in risky behavior, but whether he acted with deliberate indifference that shocks the conscience. Stinson again states the wrong standard.

Second, he states the standard at too high a level of generality. The Supreme Court has repeatedly instructed lower courts and litigants not to define clearly established law generically, but instead to do so with reference to specific factual circumstances. *Lopez c. Sheriff of Cook Cty.,* 993 F.3d 981, 988 (7th Cir. 2021). A general rule alone—particularly one that amounts to nothing more than a statement that a police officer can be constitutionally liable for an auto accident that

causes serious injury—fails to give future officers adequate notice of what conduct crosses the constitutional line.

### 2. Stinson Does Not Identify any Closely Analogous Seventh Circuit Cases or any Robust Consensus of Persuasive Authorities that Support his Position.

Stinson claims that "*Hill* put [Streicher] on notice" that his conduct was unconstitutional. Appellee Br. 36. But that cannot be true, and a clearly established right cannot be found, as the Court in *Hill* concluded that there was no constitutional violation in circumstances that were at least as troubling as the facts here. *See* 93 F.3d at 419 (reversing the lower court because "defendants' role in causing Hill's death did not implicate the due process clause"). If anything, *Hill*, decided at step one of the qualified immunity inquiry, affirmatively established that conduct such as Streicher's—distracted driving that creates a generic risk to the public at large—does *not* violate the Fourteenth Amendment. *See*, *e.g.*, *McGee*, 55 F.4th at 573 (concluding that no basis existed to find law was clearly established when controlling case, decided at step one of the qualified immunity analysis, established the opposite of what the plaintiff contended).

Stinson then points to *Flores* as an allegedly analogous case. Appellee Br. 35. In fact, *Flores* is not analogous; the facts there were far more egregious than Streicher's conduct. *See* Op. Br. 23-24. But even setting that aside, *Flores* could not possibly have provided notice to Streicher in January 2020 because this Court did not issue its opinion in *Flores* until May 2021. 997 F.3d at 725. Stinson nevertheless argues, incredibly, that *Flores* still counts because "the events in *Flores* occurred in 2018." Appellee Br. 28. Stinson does not explain how that is relevant. Of course, it is not, and Stinson's position is illogical. The issuance of a precedential

opinion is what gives officers notice of clearly established law, not the occurrence of the underlying facts in a case.[3]

Stinson turns next to the case law outside the Seventh Circuit. Even if *Hill* did not put Streicher on notice, Stinson claims that "*Browder* and *Sauers* certainly did." Appellee Br. 36. That is incorrect for at least two reasons. First, as discussed above and in Streicher's opening brief, *Browder* and *Sauers* are not analogous to this case. And *Sauers* actually upheld the officer's claim of qualified immunity because the law was not clearly established at the time of the conduct at issue. 905 F.3d at 718-23.

Second, even if they were helpful to Stinson's position, *Browder* and *Sauers* do not represent anything approaching a robust consensus of authorities. In his opening brief, Streicher identified other cases in which courts, as of January 2020, had found that there was no constitutional violation in circumstances more analogous to this case. *See* Op. Br. 28-33. Additionally, the Tenth Circuit surveyed the law of the various circuits in *Green v. Post,* and its opinion illustrates the lack of any consensus supporting Stinson's position. 574 F.3d 1294, 1304-10 (10th Cir. 2009) (concluding that as of 2006, there was no consensus that speeding through an intersection against a yellow light in a non-emergency situation would violate due process absent an intent to cause harm).

---

[3] *Billioni v. Bryant,* the Fourth Circuit case cited by Stinson (Appellee Br. 28 n.16) does not hold otherwise. The allegedly unconstitutional conduct in *Billioni* occurred in 2013. 759 F. App'x 144, 151 n.2 (4th Cir. 2019). The court nevertheless held that two decisions decided after that date were relevant to the question of what law was "clearly established" in 2013. *Id.* But the reason was that the later cases included a ruling that the relevant law had been clearly established *in 2009. Id.* Had the *Flores* decision included a holding about what law was clearly established in January 2020, then it might be relevant for the same reason. But *Flores* held no such thing. Stinson's analogy to *Billioni* therefore fails.

Stinson also cites two other out-of-circuit cases, but neither one is analogous to this case or formed anything approaching a consensus of persuasive authorities. Appellee Br. 38. *Checki v. Webb,* 785 F.2d 534, 538 (5th Cir. 1986), held that a police officer may not use his vehicle to "terrorize a civilian." The officers in that case tailgated the plaintiffs in an unmarked car at speeds over 100 mph and physically abused them at a roadblock. *Id.* at 535-36. And in *Dean v. McKinney,* 976 F.3d 407, 418 (4th Cir. 2020), the officer was speeding at over 80 mph at night on a curved, unlit road without activating his emergency lights. One of the judges on the panel in *Dean* dissented on the ground that the illegality of the officer's conduct was not clearly established at the time. *See id.* at 421-34 (Richardson, J., dissenting). Neither of these cases put Streicher on notice that his distracted driving and violations of the rules of the road were unconstitutional as of January 2020.

### 3. Streicher's Conduct Was Not Obviously Unconstitutional.

In a last-ditch effort to justify the district court's decision, Stinson argues for the very first time that Streicher's conduct was so obviously unconstitutional that no analogous case or consensus of authorities was needed to put him on notice. Appellee Br. 39-40. That argument is implausible on its face.

First, it rests on a misrepresentation of the factual record. Stinson claims that Streicher was "deliberately looking down at his cell phone for his own personal gratification and not at the road." Appellee Br. 40. But, as discussed earlier, the parties' agreed statement of facts states plainly that Streicher was not using his phone just before or at the time of the collision with Stinson. *See* R. 33 at 6-7; SA 15-16.

Second, the "so obvious" route is reserved for "rare cases" displaying extraordinarily shocking intentional abuses of power. *See Leiser v. Kloth,* 933 F.3d 696, 702 (7th Cir. 2019) (providing examples). Moreover, to invoke the rule, a plaintiff still must show that a general constitutional rule that has already been identified in controlling case law "applies with obvious clarity to the specific conduct in question." *Cibulka*, 992 F.3d at 640. For the reasons discussed herein and in Streicher's opening brief, this is not such a case, and Stinson does nothing to persuasively argue otherwise.

## CONCLUSION

For the reasons explained above and in Streicher's opening brief, the Court should exercise its appellate jurisdiction, reverse the district court's order denying Streicher's motion for summary judgment based on qualified immunity, and remand with instructions to dismiss the § 1983 due process claim against him.

April 27, 2023

Respectfully submitted:

HANSEN REYNOLDS LLC

*s/Andrew A. Jones*
Andrew A. Jones
James F. Cirincione
John W. McCauley
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: (414) 455-7676
ajones@hansenreynolds.com

GRADY, HAYES & NEARY LLC
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive
Waukesha, Wisconsin 53188
Phone: (262) 347-2001
tjd@ghnlawyers.com

*Attorneys for Defendant-
Appellant Joel Streicher*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) and Circuit Rule 32 because, according to the word-count feature in Microsoft Word, the brief contains 6,608 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. 32(f).

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Georgia font for the body of the brief and 11-point Georgia font for footnotes.

Dated: April 27, 2023.

_s/Andrew A. Jones_
Andrew A. Jones
Counsel for Appellant