

March 20, 2025

<u>VIA ELECTRONIC FILING</u>
Office of the Clerk
U.S. Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen - United States Courthouse
Room 2722
219 S. Dearborn Street
Chicago, IL 60604

      RE:    The Estate of Ceasar Stinson, et al vs. Joel Streicher, Appeal No. 22-3043
              Plaintiffs-Appellees' Fed. R. App. Pro. 28(j) Notice of Supplemental Authority

Dear Clerk:

This letter is to notify this Court of new, pertinent legal authority in the above-referenced appeal pursuant to Fed. R. App. Pro. 28(j).

On March 17, 2025, this Court issued its opinion in *Taylor v. Schwarzhuber, et al.*, Appeal No. 23-3151. The Court's discussion on qualified immunity at pages 7-13 of the slip opinion in *Taylor*, enclosed, is relevant to evaluating the Plaintiffs-Appellees' arguments regarding the inapplicability of qualified immunity to Defendant-Appellant Joel Streicher, the convicted felon, under the circumstances of this case as set forth at pages 24-39 of the Brief of Plaintiffs-Appellees. (Docket 31)

In compliance with Rule 28(j), the body of this letter contains 112 words.

Sincerely,

**GINGRAS, THOMSEN & WACHS, LLP**

s/Mark L. Thomsen
Mark L. Thomsen
Sarah F. Kaas
Direct Dial: (414) 935-5482
Email: mthomsen@gtwlawyers.com
       skaas@gtwlawyers.com

*Counsel for Plaintiffs-Appellees, the Estate of
Ceasar Stinson and Chipo Samvura*

Eau Claire
101 Putnam Street, P.O. Box 390
Eau Claire, WI 54703
Phone: (715) 839-9500
Fax: (715) 839-9571

Madison
8150 Excelsior Drive
Madison, WI 53717
Phone: (608) 833-2632
Fax: (608) 833-2874

Milwaukee
219 N Milwaukee Street, Ste. 520
Milwaukee, WI 53202
Phone: (414) 837-4167
Fax: (414) 763-6413

Waukesha
741 N Grand Avenue, Ste. 209
Waukesha, WI 53188
Phone: (414) 837-4167
Fax: (414) 763-6413

cc:     Mr. Andrew A. Jones (via e-filing)
         Mr. Thomas Donnelly (via e-filing)
         Mr. James F. Cirincione (via e-filing)
         Mr. John W. McCauley (via e-filing)

In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 23-3151

ISAIAH TAYLOR,

*Plaintiff-Appellant,*

*v.*

JUSTIN SCHWARZHUBER, et al.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-00600 — **Stephen C. Dries**, *Magistrate Judge.*

———————————

ARGUED MAY 23, 2024 — DECIDED MARCH 17, 2025

———————————

Before JACKSON-AKIWUMI, LEE, and PRYOR, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* On December 21, 2015, at just past seven in the evening, sixteen-year-old Isaiah Taylor ran through his Milwaukee neighborhood to deliver a holiday turkey to neighbors. He was stopped by police officers Justin Schwarzhuber and Jasen Rydzewski, who frisked him, searched his bag, and detained him in their police car while they checked if he had any outstanding warrants—and if any

"fresh robberies" were reported in the area. Taylor later sued the officers under 42 U.S.C. § 1983 for conducting an unreasonable search and seizure in violation of the Fourth Amendment and for racial profiling in violation of the Equal Protection Clause of the Fourteenth Amendment.

The magistrate judge presiding over the case in district court granted qualified immunity and summary judgment to Schwarzhuber and Rydzewski on Taylor's Fourteenth Amendment equal protection claim, and on Taylor's Fourth Amendment claim so far as the initial stop and the frisk were concerned. But the court denied qualified immunity to the officers on another Fourth Amendment issue, sending that issue to trial: the lawfulness of the officers' continued detention of Taylor beyond the initial stop and frisk. The jury found the officers not liable, and the court later denied Taylor's motion for post-trial relief pursuant to Federal Rule of Civil Procedure 59.

Taylor now appeals. He argues that the court improperly awarded qualified immunity and summary judgment to the officers, and improperly declined to grant him judgment as a matter of law. We affirm the grant of summary judgment to the officers on Taylor's Fourteenth Amendment equal protection claim. But, on this record, we conclude that the officers are not entitled to qualified immunity or summary judgment on Taylor's Fourth Amendment unreasonable search and seizure claims. As to those claims, we vacate the summary judgment on the stop and frisk issue, vacate the jury verdict on the continued detention issue as a result, and remand for a new trial.

# I

In 2015, four nights before Christmas, Isaiah Taylor and his mother had returned home from an event where they were handing out holiday meals to needy families. Once home, Taylor told his mother that he wanted to deliver a frozen turkey to a family he knew in the neighborhood too. Taylor's mother agreed, so Taylor put the turkey in a brown paper bag and left home at approximately 7:00 p.m. It was cold, and Taylor hurried down the street to the neighbor's house.

At the same time, Milwaukee police officers Justin Schwarzhuber and Jasen Rydzewski were in a police car near Taylor's house. The Milwaukee Police Department had assigned the officers to patrol the area, which had seen a spate of juvenile armed robberies. Schwarzhuber and Rydzewski were not aware of any robbery that had occurred that evening.

Taylor, Schwarzhuber, and Rydzewski all provide different accounts of what happened next. According to Taylor, as he ran down the street, he saw a police car sitting idle with its lights off. He kept running, maintaining his speed and direction. The next thing he knew, the police had activated their siren and were yelling at him to stop. He stopped at once. One of the officers approached him and "immediately started patting [him] down without telling [him] why or asking if [the officer] could."

Rydzewski and Schwarzhuber tell a slightly different story—of a teenage boy who looked like he was evading the police. According to Rydzewski's deposition testimony, he and Schwarzhuber were in their police vehicle when they saw

Taylor "booking it … running faster than what you'd nor-
mally run across the street." Rydzewski said it "did not look
like [Taylor] was exercising." When he saw Taylor carrying
something, he thought to himself that it looked like "this guy
had stole [sic] a purse or something like that and he's running
with it." Rydzewski testified that as Taylor ran down the
street, he made eye contact with Rydzewski and Schwarzhu-
ber and "increased his speed." Taylor then ran diagonally
across the street, cutting off the patrol car, and continued run-
ning in the same direction on the opposite side of the side-
walk. Rydzewski yelled at Taylor to stop, and Taylor stopped.
Rydzewski got out of the police car, introduced himself, and
asked Taylor for permission to "pat [him] down for some
weapons." Taylor agreed and "put his arms out like an air-
plane" for Rydzewski to frisk him.

Schwarzhuber's account largely matches Rydzewski's
with one exception. Like Rydzewski, Schwarzhuber testified
that he saw Taylor running down the street holding some sort
of bag. He also recalled that Taylor sped up: Taylor "looked
back and then looked forward and kept running faster." Un-
like Rydzewski, Schwarzhuber did not mention Taylor cut-
ting off the police car.

At some point during the stop, Schwarzhuber searched
Taylor's bag and saw that it contained a turkey. Taylor says
that he told both Schwarzhuber and Rydzewski during the
search that his bag contained a turkey. After Rydzewski pat-
ted Taylor down and Schwarzhuber searched his bag, they
asked him to sit in the patrol car. Taylor "did not feel that [he]
had a choice," so he sat in the car.

At this point, Rydzewski and Schwarzhuber activated
their body cameras, so we have video evidence of what

happened next. Schwarzhuber called into dispatch, reporting that they had stopped a "Black male for suspicious activity." Meanwhile, Rydzewski asked Taylor for his phone number. Then he told Taylor to put his legs inside the police car, and closed the door on Taylor. As Rydzewski walked around the back of the patrol car, he asked Schwarzhuber, "What's in there?" Schwarzhuber replied, "Turkey, it was a turkey." This part of the video belies Rydzewski's deposition testimony (which he later changed at trial) that he did not know Taylor had a turkey until "a day later or whatever the case may be."

After Rydzewski got in the front passenger seat of the car, the officers ran Taylor's name through their system to see if he had any outstanding warrants. According to Schwarzhuber, they also checked to see if he "wasn't a runaway or missing." Rydzewski, on the other hand, says they were waiting to see if any "new fresh robberies [had] come over."

By this point, Taylor was tearing up in the back of the car and telling the officers that he was taking a turkey to his friend's house. No warrants came through, and the officers let Taylor go. In all, the stop lasted approximately five minutes.

In April 2021, Taylor sued Schwarzhuber, Rydzewski, and the City of Milwaukee in Wisconsin state court under 42 U.S.C. § 1983, which allows suits against local officials for violating an individual's constitutional rights. Taylor's complaint presented three claims for relief: one for racial profiling in violation of the Equal Protection Clause of the Fourteenth Amendment, one for unreasonable seizure in violation of the Fourth Amendment, and one for unreasonable search in violation of the Fourth Amendment. The defendants removed the case to federal court, where they sought summary judgment. Taylor filed a memorandum in opposition to the

defendants' motion for summary judgment. He noted in the memorandum that he, not the defendants, should be granted summary judgment, but he did not file a summary judgment motion of his own.

The defendants won a partial victory at summary judgment. The court found that Taylor did not present sufficient evidence to substantiate his equal protection claim. The court also found that Schwarzhuber and Rydzewski probably did violate the Constitution when they stopped Taylor and frisked him, but Taylor had not provided any cases demonstrating that the initial stop or the frisk violated clearly established law. By contrast, the court decided, Taylor had provided sufficient caselaw to demonstrate that Schwarzhuber and Rydzewski violated clearly established law by continuing to detain him after any reasonable suspicion had dissipated. On that one issue the court denied summary judgment and the parties proceeded to trial.

After a two-day trial, the jury found Rydzewski and Schwarzhuber not liable for continuing to detain Taylor without reasonable suspicion after they learned he was carrying a turkey. Taylor did not, during or after trial, file a motion under Federal Rule of Civil Procedure 50 seeking judgment in his favor as a matter of law. Instead, after trial, he filed a motion under Federal Rule of Civil Procedure 59 asking the court to do two things: (1) alter or amend the verdict in his favor to reflect that the officers' continued detention was unconstitutional, and (2) order a new trial solely to assess damages for that constitutional violation. The court denied the motion. Taylor now appeals.

## II

Taylor challenges three of the court's decisions: (1) granting the officers qualified immunity with regard to the initial stop, frisk, and equal protection claims; (2) implicitly denying Taylor judgment as a matter of law on his Fourth Amendment claims by granting summary judgment to the officers on two issues and sending the third issue to trial; and (3) letting the jury's continued detention verdict stand. We first consider the qualified immunity decision, then Taylor's claim that the court should have awarded him judgment as a matter of law, and finally, the proper disposition of the trial verdict.

### A.  Qualified Immunity

We begin with the court's decision to grant the officers qualified immunity for the initial stop, frisk, and equal protection claims at summary judgment. We review the summary judgment decision de novo, viewing the facts in the light most favorable to Taylor as the non-moving party. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020).

Qualified immunity shields federal and state officials from monetary liability unless the law they ostensibly violated was clearly established at the time of the alleged offense. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). When a defendant asserts qualified immunity at the summary judgment stage, a plaintiff may overcome that assertion by showing (1) there is a dispute of material fact as to whether the official violated a "statutory or constitutional right," and (2) the right was "clearly established at the time" of the challenged conduct. *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (internal quotations omitted). A clearly established law is one where "existing precedent [has] placed the statutory or constitutional

question beyond debate." *al-Kidd*, 563 U.S. at 741. Courts consider whether "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In doing so, courts must compare "the specific context of the case" to the clearly established law at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

The court awarded qualified immunity to Schwarzhuber and Rydzewski on Taylor's initial stop and frisk claims because Taylor did not provide cases showing the officers' actions violated clearly established law. The court was correct that Taylor failed to highlight relevant cases—but that should not have been the end of the analysis. We have previously stated that although "[t]he plaintiff bears the burden of establishing the existence of a clearly established constitutional right," a plaintiff's failure to cite a case on point is "not fatal by itself." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176–77 (7th Cir. 1994). To the contrary, "we must determine qualified immunity in light of all relevant precedents—both those cited by the parties and those we discover ourselves." *Id.* at 1177. Having done so and viewing the facts, as we must, in the light most favorable to Taylor as the non-movant at summary judgment, *James*, 959 F.3d at 314, we conclude that clearly established law bars the type of stop and frisk conducted here.

### 1. The *Terry* Stop

The contours of the Fourth Amendment's prohibition against "unreasonable searches and seizures" are clear. U.S. CONST. amend. IV. Officers may not lawfully initiate an investigatory stop—often called a *Terry* stop after *United States v. Terry*, 392 U.S. 1 (1968)—unless they have "reasonable suspicion that a crime occurred." *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009). That reasonable suspicion must be based on "specific and articulable facts" that suggest criminality, *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (cleaned up), not on "a mere hunch," *Navarette v. California*, 572 U.S. 393, 397 (2014) (cleaned up). The government bears the burden of demonstrating "some minimal level of objective justification for making a stop," *Tilmon*, 19 F.3d at 1224, "by a preponderance of the evidence," *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013). Courts evaluate such justifications "considering the totality of the circumstances," *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010), and using "commonsense judgments and inferences about human behavior." *Illinois v. Wardlaw*, 528 U.S. 119, 125 (2000).

Our caselaw yields the conclusion that, when the facts are viewed in the light most favorable to Taylor, Rydzewski and Schwarzhuber violated clearly established law because they lacked reasonable suspicion to stop Taylor. When we take out the disputed material facts and take Taylor's account to be true, the only basis for the stop was that Taylor was (1) running (2) with a bag (3) in a high crime area. Both our precedent and Supreme Court precedent demonstrate that these facts are insufficient to create reasonable suspicion.

The case *Gentry v. Sevier*, 597 F.3d 838 (7th Cir. 2010), should have put Rydzewski and Schwarzhuber on notice of

this. (We put to one side that the doctrine of qualified immunity operates on the fiction that police officers even follow caselaw development at such a granular level. *See, e.g.*, Joanna C. Schwartz, *Qualified Immunity's Boldest Lie*, 88 U. Chi. L. Rev. 605, 630 (2021) ("[O]fficers are not educated about the facts and holdings of cases applying [watershed decisions like] *Graham* [*v. Connor*, 490 U.S. 386 (1989),] and [*Tennessee v.*] *Garner*[, 471 U.S. 1 (1985),] to various factual scenarios—precisely the types of cases that the Supreme Court says are necessary to give fair notice to officers and clearly establish the law for the purposes of qualified immunity.").)

In *Gentry*, an Indianapolis resident named Kenneth Gentry was pushing a wheelbarrow through a residential neighborhood at 2:30 in the morning when an item fell out of the wheelbarrow and woke a neighbor who called the police. The police arrived to find Gentry "trotting" with the wheelbarrow. 597 F.3d at 843. Gentry put the wheelbarrow down, waved to the officers, and walked toward the patrol car. One of the officers patted Gentry down while another rummaged through the wheelbarrow. The wheelbarrow contained items that belonged to people in the area, so Gentry was charged with burglary and theft. Gentry sued the officers, claiming that they had conducted a search without reasonable suspicion. We agreed with Gentry, noting that "Gentry himself did not give the officers a reason to suspect that he had been engaged in any wrongdoing." *Id.* at 846.

We find the facts of *Gentry* closely analogous to those here. Like Gentry, Taylor was moving through public space with an unidentified object. And, viewing the facts in the light most favorable to Taylor, he did not flee from the police; he stopped when the officers called out to him. Under *Gentry*, those facts

are insufficient to create the reasonable suspicion that would authorize an officer to stop someone.

Looking beyond our circuit law, the Supreme Court's decision in *Reid v. Georgia*, 448 U.S. 438 (1980), also should have put Rydzewski and Schwarzhuber on notice. Like *Gentry*, *Reid* clearly establishes that an officer cannot subject someone to a stop just because they are moving through space with an unidentified object. In *Reid*, DEA agents stationed in the Fort Lauderdale airport noticed that Reid was carrying a bag over his shoulder and occasionally looking back at another man as Reid walked through the airport. The agents stopped both men, asked to search their bags, and the search revealed cocaine inside Reid's bag. Reid moved to suppress the evidence, and he prevailed at the high court. The Court found "the agent could not as a matter of law, have reasonably suspected the petitioner of criminal activity." *Id.* at 441. The problem was, the Court explained, Reid's actions "describe[d] a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Id.*

So too in our case. Taylor did what many people might do on a cold winter evening: run down the street carrying something. This is exactly the kind of commonplace behavior that could subject people to virtually random seizures if we find the officers' conduct justified. *Reid*, like *Gentry*, prevents us from blessing the officers' conduct with immunity before trial.

Schwarzhuber and Rydzewski resist this conclusion, arguing that they did not stop Taylor just because he was running down the street. Rather, they insist, they had reasonable

suspicion because Taylor was running in an area where there had been a series of robberies. But clearly established law holds that police officers cannot stop people going about their business just because they happen to be in a high-crime area.

We held as much in *United States v. Johnson*, 170 F.3d 708 (7th Cir. 1999). There, the police received a citizen report that there was drug activity taking place at a Milwaukee apartment. As the police prepared to knock on the apartment's door, Johnson walked out. The police stopped and frisked him. On appeal, we agreed with Johnson that the stop was unconstitutional. We determined that the police had nothing but "generalized suspicion" based on Johnson's presence in the apartment. *See id.* at 714. *Johnson* should have put Schwarzhuber and Rydzewski on notice that they cannot stop someone just because he matches the general description of a suspect in a high-crime area.

This proposition is well established in our circuit by multiple cases of which Schwarzhuber and Rydzewski should have taken note. *See, e.g.*, *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005) ("Both parties agree that a defendant's mere presence in an area of expected criminal activity does not in and of itself justify an investigatory stop.") (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion.")); *United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012) ("A mere suspicion of illegal activity at a particular place is not enough to transfer that suspicion to anyone who leaves that property."); *United States v. Dennis*, 115 F.3d 524, 532 (7th Cir. 1997) ("The mere fact that certain characteristics that a law enforcement officer observes fit a profile will not

establish reasonable suspicion.") (citing *Reid*, 448 U.S. at 440–41 (finding officer's belief that an individual fit a "drug courier profile" insufficient for reasonable suspicion)).

In sum, after viewing the facts in the light most favorable to Taylor, clearly established law shows Schwarzhuber and Rydzewski lacked reasonable suspicion to stop Taylor. Taylor was doing what any teenager might be doing on a cold December evening—running down the street with a bag. That is not enough to give police officers reasonable suspicion that a crime occurred. The officers do not merit qualified immunity from Taylor's unconstitutional stop claim at the summary judgment stage.

## 2. The Frisk

For similar reasons, we hold that disputed material facts read in the light most favorable to Taylor demonstrate that Schwarzhuber and Rydzewski violated Taylor's clearly established Fourth Amendment right when they patted him down for weapons.

Officers may only search individuals for weapons when they have a reasonable, "articulable suspicion that the suspect is 'armed and dangerous.'" *Green v. Newport*, 868 F.3d 629, 635 (7th Cir. 2017) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). Looking at the facts in the light most favorable to Taylor, the officers lacked that articulable suspicion. Taylor states that he ran down the street while holding a bag, and he stopped when the officers asked him to stop. Nothing about those facts suggests Taylor was armed and dangerous. All they suggest is that Taylor was present in an area where Schwarzhuber and Rydzewski had been assigned to patrol.

But being present in an area that officers have been assigned to patrol is an insufficient rationale for a search according to the Supreme Court. In *Ybarra v. Illinois*, 444 U.S. 85 (1979), Illinois Bureau of Investigation agents executed a search warrant in a bar where heroin transactions were known to occur. *See id.* at 87–88. When the agents entered the bar, they patted down everyone who was present, including Ybarra. *See id.* at 88. The Court ruled that the officers violated the Fourth Amendment when they patted down Ybarra because his mere presence in the bar gave the officer no "particular reason to believe that he might be inclined to assault them." *Id.* at 93. The same is true here: Taylor's mere presence gave the officers no reason to believe he was armed and dangerous.

Rydzewski claims that Taylor allowed him to conduct the pat down, which eliminates any Fourth Amendment concern. *See United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001) (noting that consent can make a protective pat-down search appropriate). But we read the facts in Taylor's favor at this stage, and Taylor maintains that he was frisked without his consent. The officers cannot succeed in their quest at the summary judgment phase for qualified immunity from Taylor's unconstitutional search claim any more than they can his unconstitutional stop claim.

### 3. Equal Protection

By contrast, Schwarzhuber and Rydzewski are entitled to qualified immunity from Taylor's Fourteenth Amendment equal protection claim. To recap, to force the officers to trial in the face of their claim of qualified immunity, Taylor must show (1) a genuine dispute of material fact that the officers violated a statutory or constitutional right and (2) that the

right was "clearly established" at the time. *Gupta*, 19 F.4th at 1000. Courts may address those two questions "in either order," *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021), and "[i]f *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (internal quotations omitted).

On the summary judgment record before us, we must conclude that Taylor's suit fails under the first inquiry. Taylor did not present enough evidence to call into question whether the officers violated his constitutional right to equal protection under the law by racially profiling him.

To prove racial profiling in violation of the Fourteenth Amendment's Equal Protection Clause, plaintiffs must show that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). To prove discriminatory purpose, plaintiffs must demonstrate that "'the decisionmaker … selected or reaffirmed a particular course of action at least in part because of … its adverse effects upon an identifiable group.'" *Id.* at 645 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987)). To prove discriminatory effect, plaintiffs must show that "they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that the plaintiffs were treated differently from members of the unprotected class." *Id.* at 636. Plaintiffs can do so by identifying individuals or by presenting statistics. *See id.* Importantly, plaintiffs must show both discriminatory purpose *and* discriminatory effect.

Taylor failed to present the court with any evidence of the second category, discriminatory effect. He did not identify any similarly situated individuals treated differently, present

any statistics that suggest discriminatory effect, or provide any other type of proof. He therefore did not satisfy the elements of his Fourteenth Amendment claim, and the court rightly granted Schwarzhuber and Rydzewski qualified immunity from the claim because Taylor did not show a constitutional violation to begin with.

## B.  Taylor's Request for Judgment as a Matter of Law on Appeal

We next turn to Taylor's request that we enter judgment in his favor on all his Fourth Amendment claims. Taylor contends that the trial court should have granted him judgment as a matter of law on those claims, either at summary judgment or pursuant to his pre- and post-trial motions. His brief urges us to fix that error by "hold[ing] the stop, frisk, detention and warrants check violated his Fourth Amendment rights as a matter of law." We decline to do this for two reasons.

First, as we have noted, there are disputed material facts (namely, whether Taylor sped up and changed direction when he saw the police) that would preclude judgment before trial in *either* party's favor on the stop and frisk claims. If a jury credits the officers' version that Taylor changed his speed and direction when he saw the police and the jury decides "a reasonable officer in those circumstances would have been suspicious" that Taylor was evading the police, it could find in the officers' favor. *See United States v. Ford*, 333 F.3d 839, 843 (7th Cir. 2003) (emphasis omitted); *see also Wardlow*, 528 U.S. at 124 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion.").

There is a second, larger problem. As we have said, Taylor insists the trial court should have granted him summary judgment on all his Fourth Amendment claims. But Taylor did not comply with the federal and local rules that govern summary judgment practice—rules that trial courts have discretion to enforce strictly. *See Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (federal rules); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) (local rules).

Federal Rule of Civil Procedure 7 specifies that if a party wants to request a court order, that request "must be made by motion." Fed. R. Civ. P. 7(b). The motion must be "in writing unless made during a hearing or trial" and "state with particularity the grounds for seeking the order." *Id.* The Eastern District of Wisconsin's local rules require litigants to file specific memoranda and statements with summary judgment motions:

> With each motion for summary judgment, the moving party must file:
>
> (A) a memorandum of law;
> (B) a statement setting forth any material facts to which all parties have stipulated;
> (C) a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law; …
> (D) any affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

E.D. Wis. Civ. R. 56(b)(1). The local rules also specify that every motion must be accompanied by "a supporting memorandum." *Id.* at 7(a)(1). Failure to abide by the rules "may

result in sanctions … including the Court denying … the mo-tion." *Id.* at 7(d).

Taylor did not observe these rules. He filed no motion or accompanying memorandum that explained why *he* was en-titled to summary judgment. He filed only a response memo-randum, with a proposed set of facts, in opposition to *the de-fendants' request* for summary judgment. And the three fleet-ing instances in his opposition memorandum where he argu-ably requested summary judgment for himself are insuffi-cient. For example, in the opposition memorandum, he did not request summary judgment for his claim that the initial stop was unconstitutional. And in his argument about the frisk, he hedged any arguable request for summary judgment in his favor by saying "[a]t the very, very least, this issue is for the jury to decide in this case." Furthermore, his concluding statement about the continued detention claim—that "undis-puted facts warrant entering summary judgment in plaintiff's favor on the Fourth Amendment claims"—is ambiguous. The statement does not articulate which Fourth Amendment claim merits summary judgment in his favor and why. The court therefore committed no error in declining to construe these statements as an independent motion by Taylor for summary judgment.

Taylor rightly points out that a trial court can grant sum-mary judgment sua sponte. *See* FED. F. CIV. P. 56(f) ("After giv-ing notice and a reasonable time to respond, the court may … consider summary judgment on its own …."). And we acknowledge that Taylor provided *some* materials that the court could have used to consider summary judgment for Taylor sua sponte, including the document we have been dis-cussing (his memorandum opposing the defendants' motion

for summary judgment) and an accompanying proposed statement of facts that Taylor filed (also framed in opposition to defendants' motion). But a trial court has discretion to require strict compliance with procedural rules. *See Zoretic*, 832 F.3d at 641; *Stevo*, 662 F.3d at 886–87. And Taylor provides no authority to suggest that a trial court errs if it does *not* grant summary judgment of its own volition under these circumstances. We will not disturb the court's proper application of its discretion in this case.

To the extent that Taylor asks us to grant him judgment as a matter of law through his Rule 59 motion, we are unable to do so. Taylor appears to ask us to reverse the jury verdict on the ground that "the trial of the detention claim … did nothing except confirm that the officers had no reasonable suspicion." But when a party fails to bring a post-verdict challenge under Rule 50(b), there is "no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 407 (2006). Since Taylor never filed a Rule 50 motion, we cannot overturn the judgment for lack of evidence of reasonable suspicion.

We pause here to note that counsel for both parties, not just Taylor's counsel, made significant errors during this litigation that affect our review on appeal. As we have indicated, plaintiff's counsel ignored opportunities to file motions, including a summary judgment motion and a Rule 50 motion, and then argued both to the trial court and to us that the trial court should have granted relief related to those types of motions anyway. Defense counsel included zero citations in the facts section of the appellees' brief, violating Federal Rules of Appellate Procedure 28(a)(6), 28(b), and 28(e). Then, at oral

argument, defense counsel failed multiple times to substantiate their statements when asked by the panel to do so. We urge both plaintiff's counsel and defense counsel to reacquaint themselves with the civil rules, appellate rules, and local rules before proceeding on remand. It is hardly fair to their clients for lawyers to overlook deadlines and handle facts carelessly because the lawyers are either unfamiliar with or choose to disregard litigation rules.

## C.  Unreasonable Detention

We have one final matter to address: the disposition of Taylor's claim that the officers detained him past the point of any reasonable suspicion, in violation of the Fourth Amendment. Recall that the trial court found the officers were not entitled to qualified immunity for this claim. The court allowed the issue to proceed to trial, where the jury found Schwarzhuber and Rydzewski not liable. Taylor then filed a Rule 59 motion, asking the court to amend or alter judgment—essentially to undo the jury verdict and decide the issue in his favor—and then to hold a trial on the damages the officers would owe for that constitutional violation. The court refused.

On appeal, as we discussed earlier, Taylor asks us to enter judgment as a matter of law for him on this continued detention issue, along with the other Fourth Amendment issues in his case (the initial stop and the frisk). Although we decline to do so, we vacate the jury verdict and remand the continued detention claim to the district court for further consideration along with the stop and frisk claims. Here is why: If the jury finds that Rydzewski and Schwarzhuber had *no* reasonable suspicion to stop Taylor in the first place, then the officers clearly subjected him to unlawful continued detention

thereafter. Even one second of continued detention after an unlawful stop is too long. *See United States v. Lopez*, 907 F.3d 472, 484, 486 (7th Cir. 2018) (finding police subjected Lopez to an unconstitutionally long stop after finding that they lacked reasonable suspicion to conduct a *Terry* stop). On the other hand, if the jury finds that the officers *did* have reasonable suspicion to stop Taylor, the jury must then make an independent decision about whether the officers had a continuing basis for detaining him. For under the Fourth Amendment, even if a police officer has reasonable suspicion to initiate a *Terry* stop, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *See Rodriguez v. United States*, 575 U.S. 348, 350 (2015).

In short, the fate of the continued detention claim depends on how a jury decides the constitutionality of the initial stop. And because the court improperly excluded that predicate issue (the initial stop) from trial for the reasons we explained earlier, letting the jury's verdict stand is improper. *See* 28 U.S.C. § 2106; *cf. Nilssen v. Motorola, Inc.*, 255 F.3d 410, 414–15 (7th Cir. 2001) (vacating a judgment that improperly bifurcated intertwined legal issues, and remanding). Consequently, we remand for a new trial in which the jury will hear all of Taylor's viable Fourth Amendment claims: unlawful stop, unlawful search, and unlawful continued detention. Furthermore, because the trial judgment cannot stand, "it is impossible for a court to grant any effectual relief whatever" on Taylor's post-judgment Rule 59 motion, and the motion is moot. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).

For these reasons, this matter is AFFIRMED IN PART, VACATED IN PART, and REMANDED for proceedings consistent with this opinion.